**Thomas Caldwell MUNDY,
Plaintiff-Appellant,**

v.

**SOUTHERN BELL TELEPHONE AND
TELEGRAPH COMPANY,
Defendant-Appellee.**

**No. 80–7932.**

United States Court of Appeals,
Eleventh Circuit.

May 17, 1982.

Keenan & McColm, Atlanta, Ga., Don C. Keenan, Arnold R. Ginsberg, Miami, Fla., for plaintiff-appellant.

Kilpatrick & Cody, George B. Haley, Virginia S. Taylor, Atlanta, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, TJOFLAT and VANCE, Circuit Judges.

PER CURIAM:

In this diversity case, Thomas Caldwell Mundy asserted six claims based on the alleged acts of supervisory employees of the defendant, Southern Bell Telephone & Tele-

graph Company (Southern Bell), which Mundy alleged caused him to resign his position with the defendant.[1] Based on the pleadings and the depositions of three principal witnesses, including Mundy, the district court granted the defendant's motion for summary judgment on all counts of the complaint. Mundy appeals the district court's ruling only as to that count alleging intentional infliction of emotional distress under Florida law.[2] For purposes of reviewing the summary judgment granted defendant, we assume the truth of Mundy's allegations and deposition testimony, and we draw therefrom all permissible inferences in his favor.

Mundy went to work for Southern Bell as an installer-repairman in Jacksonville, Florida, in 1962. He received promotions within the collective bargaining unit from then until March 15, 1969, when he was promoted to Sales Manager and became part of the management team. Soon after this promotion, Mundy was instructed by his superiors that he would be expected to participate in a scheme whereby management personnel submitted falsified expense vouchers in order to be reimbursed for out-of-pocket expenses which they felt were legitimate business expenses but which Southern Bell would not reimburse if accurately reported.[3] Mundy was required to participate in the scheme in order to ensure his job security, and was instructed to oversee the collection and disbursement of proceeds of the enterprise.

Although with reservations, which he expressed from time to time to his superiors, Mundy cooperated until late in 1972, at which time he refused to participate further. With one or two isolated exceptions, Mundy was not subsequently asked to continue his participation. However, his withdrawal from the scheme precipitated a pattern of harassment designed to induce either his resignation or his return to the fold.

Mundy alleges that this harassment, which began in early 1973, included: threats by his superiors to "get" Mundy or "destroy" his career; transfers to less desirable job assignments, including one lateral transfer from a staff job to a line job from which he could be more easily demoted; unfair and improper evaluations of Mundy for possible pay raises; inaccurate and unsupported negative evaluations of his job performance; refusals to approve reimbursement for legitimate business expenses incurred by Mundy; attempts to damage his credibility with his peers and superiors and to alienate his peers and subordinates; and rejections of legitimate suggestions made by Mundy.

This harassment was performed by agents of Southern Bell in the scope of their employment. As a result of the harassment, Mundy suffered severe emotional and mental distress, and eventually resigned his position on March 16, 1977.

The district court disposed of Mundy's claim of intentional infliction of mental and emotional distress as follows:

The Florida courts have applied two different rules regarding the availability of recovery of damages for the intentional infliction of mental distress. Certain of the District Courts of Appeal have held that damages may not be recovered for the intentional infliction of mental distress which is not incidental to or connected with an independent tort .... Yet others have held that "there is in Florida no bar to an independent action

---

1. In addition to the claim of intentional infliction of emotional distress at issue in this appeal, the complaint alleged: (i) wrongful termination; (ii) breach of contract; (iii) conspiracy to violate Mundy's civil rights in violation of 42 U.S.C. § 1985(2); (iv) negligence; and (v) prima facie tort.

2. The parties agree that Florida substantive law governs this case.

3. For example, one manager might host and pay for a barbecue under circumstances which were thought to be business-related but for which Southern Bell would not provide reimbursement. In order for the host to recoup his expenses, he and other managers would submit expense vouchers for business luncheons which never occurred, or would inflate expenses for actual business luncheons. The proceeds would then be turned over to the host.

for intentional infliction of severe mental distress when the conduct alleged is 'so outrageous in character, and so extreme in degree as to go beyond all bounds of decency ....' "

Regardless of which rule is applied to this case, the outcome remains the same. Plaintiff's claim for mental distress does not arise out of an independent tort; nor does it allege conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency ..."

(citations omitted).

We adhere to the district court's refusal to decide whether Florida recognizes an independent cause of action for intentional infliction of severe mental distress, a question that remains open in Florida. *See Ford Motor Credit Co. v. Sheehan*, 373 So.2d 956, 959–60 (Fla. 1st Dist.Ct.App.), *cert. dismissed*, 379 So.2d 204 (Fla.1979). Assuming that such a tort exists, we affirm the holding of the district court that Mundy's allegations are insufficient.

To sustain an action for the intentional infliction of emotional distress in Florida, the plaintiff must allege conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *See, e.g., Slocum v. Food Fair Stores of Florida, Inc.*, 100 So.2d 396, 397 (Fla.1958); *Lay v. Roux Laboratories, Inc.*, 379 So.2d 451, 452 (Fla. 1st Dist.Ct.App.1980); *Food Fair, Inc. v. Anderson*, 382 So.2d 150, 152 (Fla. 5th Dist.Ct.App.1980); *Ford Motor Credit Co. v. Sheehan*, 373 So.2d at 959; *Gellert v. Eastern Air Lines, Inc.*, 370 So.2d 802, 808 (Fla. 3d Dist.Ct.App.1979), *cert. denied*, 381 So.2d 766 (Fla.1980). Following this test, the Florida courts recognize the tort "only in the most outrageous circumstances." *Habelow v. Travelers Ins. Co.*, 389 So.2d 218, 220 (Fla. 5th Dist.Ct.App. 1980).

Our review of the Florida cases deciding whether particular alleged conduct was so outrageous as to constitute the intentional infliction of emotional distress convinces us that the district court correctly granted the defendant's motion for summary judgment.[4] In a number of cases, Florida courts of appeal have denied claims no less compelling than Mundy's. In *Anderson, supra*, for example, a woman who had worked for Food Fair for six years was required by a security officer to submit to a polygraph examination in connection with his investigation of cash shortages at the store; company policy, he told her, was that she take the test or be discharged. The officer further informed the woman that it was company policy for her to admit prior thefts, and that if she declined to confess she would be discharged as untrustworthy. Only when the officer told her it would not go against her record did the woman, tearfully protesting her innocence, sign a statement admitting the theft of $150, a figure suggested by the officer. The officer administered the polygraph test, and told the employee, "It didn't clear." When the woman returned the next day for a retest, the officer required her to admit to thefts of $500. He then administered another polygraph test and again told her she "didn't clear." The woman was subsequently discharged on the basis of her admitted misappropriation of company cash. She later passed an independent polygraph examination. On these facts, the court of appeal held that the conduct of the security officer did not meet the test of outrageous-

---

**4.** As to the propriety of the district court deciding the degree of outrageousness of the defendant's conduct on a motion for summary judgment, we note that this mixed question of law and fact is properly before the court on a motion to dismiss or for summary judgment. The district court's treatment of the question is thus confirmed, though not compelled, by the practice of Florida courts, which routinely determine on motions for dismissal or summary judgment whether the plaintiff claiming intentional infliction of emotional distress has alleged sufficiently outrageous conduct. *See, e.g., Slocum v. Food Fair Stores of Florida, Inc.*, 100 So.2d 396 (Fla.1958); *Lay v. Roux Laboratories, Inc.*, 379 So.2d 451 (Fla. 1st Dist.Ct.App. 1980); *Harper v. Orlando Funeral Home, Inc.*, 366 So.2d 126 (Fla. 1st Dist.Ct.App.1979), *cert. denied*, 386 So.2d 637 (Fla.1980).

ness, and that the trial court should have granted the defendants' motion for directed verdict on the claim for intentional infliction of emotional distress.

In *Dowling v. Blue Cross of Florida, Inc.*, 338 So.2d 88 (Fla. 1st Dist.Ct.App.1976), the trial court dismissed with prejudice the complaint of two women who alleged that their employer had discharged them based on a false accusation that they had had sexual relations with one another in the ladies' lounge of their employer's building, and that the accusations were made without benefit of a reasonable investigation. The court of appeal, holding that the employer's alleged conduct lacked the outrageous character necessary to a claim for intentional infliction of emotional distress, affirmed the dismissal.

In *Lay, supra,* the trial court dismissed with prejudice a count of a complaint alleging that the plaintiff's supervisor threatened her with the loss of her job and used humiliating language, vicious verbal attacks, and such racial epithets as "nigger," when an argument arose concerning a parking space. The court of appeal affirmed the dismissal, noting that, "Although the alleged conduct is extremely reprehensible, we do not think that [it] reaches the level of outrageousness and atrociousness [required]." 379 So.2d at 452.

The cases in which Florida courts have upheld claims of intentional infliction of emotional distress are readily distinguishable from the case before us, and have involved, for example, barbaric debt collection methods, *Sheehan, supra* (debt collector seeking to repossess plaintiff's car called his mother and told her the caller needed to get in touch with plaintiff because plaintiff's children had been in a serious automobile accident in another state); mishandling of corpses, *Kirksey v. Jernigan,* 45 So.2d 188 (Fla.1950) (en banc); and tender plaintiffs, *Korbin v. Berlin,* 177 So.2d 551 (Fla. 3d Dist.Ct.App.1965), *cert. dismissed,* 183 So.2d

835 (Fla.1966) (defendant said to six-year-old girl, "Do you know your mother took a man away from his wife? Do you know God is going to punish them? Do you know a man is sleeping in your mother's room?"). Significantly, although there are numerous Florida cases in which plaintiffs have made claims of intentional infliction of emotional distress against their former employers,[5] Mundy cites no case, and we find none, in which the plaintiff has prevailed.

Although the Florida cases do not, and perhaps cannot, identify the precise point at which conduct becomes so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community, they do make clear that the point lies well beyond Mundy's allegations.

AFFIRMED.

---

**5.** In addition to *Anderson, Dowling,* and *Lay, supra, see Catania v. Eastern Air Lines, Inc.,* 381 So.2d 265, 267 (Fla. 3d Dist.Ct.App.1980); *DeMarco v. Publix Super Markets, Inc.,* 360 So.2d 134, 136 (Fla. 3d Dist.Ct.App.1978), *aff'd,* 384 So.2d 1253 (Fla.1980); *Henry Morrison Flagler Museum v. Lee,* 268 So.2d 434 (Fla. 4th Dist.Ct.App.1972).