James M. **CORKERY**, and Carol A. Corkery, his wife, Plaintiffs,

v.

**SUPERX DRUGS CORPORATION**, and Kroger Company, Inc., Defendants.

No. 84–442 Civ–T–15.

United States District Court, M.D. Florida, Tampa Division.

Feb. 1, 1985.

Warren T. La Fray P.A. and Michael J. Ebin, Clearwater, Fla., for plaintiffs.

Peter W. Zinober, John P. McAdams, Kathleen S. Edwards, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for defendants.

AMENDED ORDER

CASTAGNA, District Judge.

The Court has for consideration the status of the above-styled case. The Defendants have filed a Motion To Dismiss the Plaintiff's fifteen Count complaint, which encompasses claims under 42 U.S.C. § 1985, the Employee Retirement Income Security Act (ERISA), and numerous state law claims. Both the Plaintiff and Defendant have supported their arguments with extensive memoranda, which the Court has carefully considered.

This case involves the unusual factual situation of a Plaintiff who fell victim to a system of discrimination that he unwittingly helped promote at an earlier time. According to the factual allegations of the Complaint, which the Court of course must accept as true for purposes of a motion to dismiss under Fed.R.Civ.P. 12(b)(6), *e.g.*, *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977), the Plaintiff is a former employee of Defendant SuperX. Plaintiff alleges that he was originally employed in July of 1977 as SuperX's Regional Loss Prevention Manager and was subsequently promoted to the position of National Security Manager in charge of the entire SuperX chain. During 1980 and up to April of 1981, the Plaintiff was directed by his immediate superior, a Mr. Layfield, to conduct investigations into the background of certain designated employees. Layfield later informed Plaintiff that the purpose of these investigations was to discover pretexts to justify

the termination of those employees, all of whom were handicapped.

On or about April 6, 1981, the tide turned on the Plaintiff, however, when he suffered serious congestive heart failure at the age of 42. Plaintiff was unable to work until May 18, 1981, at which time he returned to work. Upon return, the complaint alleges, the Plaintiff was met with a markedly different, and hostile, work environment. The adverse working atmosphere escalated, aggravating the Plaintiff's health condition to the point that he took permanent disability status in March of 1982. The Plaintiff alleges that the adverse working conditions were purposefully perpetrated to the detriment of his already fragile physical condition. Subsequently, Defendant SuperX allegedly communicated to the company's group employee insurer a falsehood—that Plaintiff had obtained other employment—resulting in the wrongful discontinuation of his disability benefits.

Following this background, the instant controversy ensued. Count I of the complaint seeks redress for violations of 42 U.S.C. § 1985(3), alleging the violation of numerous of Plaintiff's state-conferred rights as a member of the class of "handicapped employees" against whom the Defendants' discriminatory animus was based. Counts II and III are asserted under ERISA, 29 U.S.C. § 1140, charging the Defendants with purposefully discriminating against the Plaintiff in an attempt to interfere with his attainment of rights under his employer supported health and retirement plans. Count V seeks relief for intentional/negligent infliction of emotional distress contending that the Defendants' activities were undertaken with full knowledge of the Plaintiff's particular susceptibility to emotional upset and for the specific purpose of inflicting emotional harm. As to Count VII, based upon defamation, Plaintiff seeks to prove he was defamed by representations made to the group insurer that Plaintiff, in effect, had attempted to perpetrate a fraud to receive disability benefits. The remaining counts present grounds for recovery based upon civil conspiracy, breach of contract and interference with contract, among others.

As to Count I, based upon § 1985(3), the Defendants contend that the Plaintiff has failed to allege the requisite "class-based" animus which is necessary to state a claim under that provision. *See Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The class asserted by Plaintiff is that he was a "member of the class of handicapped employees toward whom the conspirators' discriminatory animus was directed." Complaint, Paragraph 25. In *Whilhelm v. Continental Title Co.*, 720 F.2d 1173, 1176 (10th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984), the Tenth Circuit addressed precisely this same question and determined:

> It is apparent that different individuals are handicapped in vastly different ways, for different periods of time, and to very different degrees or extent. The variations in each category are infinite and as a consequence the term "handicapped" does not have a definition capable of a reasonably precise application for the purposes before us.... The Complaint does not contain a description of a class of persons or group that is sufficiently definite or precise to set against the "class of persons" terminology in § 1985(3).

The *Wilhelm* Court went on to hold that even if further amendment could have developed a sufficiently defined "class" of handicapped persons, under the Supreme Court decisions in *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) and *Breckenridge, supra,* handicapped persons are not a class contemplated or protected by § 1985(3).

■ Plaintiff cites *People By Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 42–43 (2d Cir.1982), *modified on other grounds,* 718 F.2d 22 (1983), where the Court determined that a class of "mentally retarded" persons was sufficient for § 1985(3) purposes. That case can be distinguished to a certain degree from the instant case and *Wilhelm*

by the fact that "mentally retarded persons" is a significantly more limited class than the broader categorization of "handicapped persons." *People By Abrams* also predates the recent *United Brotherhood of Carpenter's* decision. And finally, the Court notes that the instant case much more closely approximates *Wilhelm* on a factual basis—a § 1985(3) claim brought by a handicapped employee against his employer for, *inter alia,* improper discharge. Count I will therefore be dismissed without leave to amend, and the Court need not reach the other proffered grounds for dismissal of this count.

As to Counts II and III, the Defendants urge dismissal based upon a statute of limitations argument. The parties agree that this Court must look to the most analogous state statute of limitations for guidance, and offer as alternatives *Fla.Stat.* § 760.10(10) (1983) (180 days for handicap discrimination); § 95.11(4)(c) (two years for action to recover lost wages); § 95.11(3)(f) (four years for action on statutory liability); and § 95.11(2)(b) (five years for contract action based upon written instrument). The parties also agree that there is no authority supporting which limitations period should be used in relation to the specific section of ERISA in question, section 510, 29 U.S.C. § 1140.

■ In determining the applicable statute of limitations, "the proper approach is to first determine the essential nature of the claim under federal law and then focus on the period applicable to such a claim under state law." *McGhee v. Ogburn,* 707 F.2d 1312, 1315 (11th Cir.1983). The *McGhee* Court went on to observe that:

> But as recognized in *Braden v. Texas A & M University System,* 636 F.2d [90] at 92 [ (5th Cir.1981) ], and *Shaw v. McCorkle,* 537 F.2d 1289, 1292 (5th Cir. 1976), the distinction between the two steps becomes blurred since the federal characterization of the claim draws heavily on state law. [*Broward Builders Exchange, Inc. v.*] *Goehring* [231 So.2d 513 (Fla.1970) ] suggests that no matter how an employment termination suit is

characterized, Florida law dictates that the two-year statute applies. *McWilliams* [*v. Escambia County School Board,* 658 F.2d 326 (5th Cir. Unit B 1981) ] holds that even though § 95.-11(4)(c) may appear on its face to be limited to actions for the recovery of back-pay, it applies to § 1983 employment suits in which the plaintiff requests legal and equitable relief.

Significantly, *McGhee* dealt with the statute of limitations applicable to racial discrimination in an employment case under § 1983 and determined that the "spirit of Florida law appears to be that employer/employee cases are governed by the two year period." 707 F.2d at 1314. As a signal of the breadth of the Court's interpretation of Florida law, the Court concluded: "Thus, no matter the theory or legal basis for the cause of action, the two year statute applies." *Id.*

■ With this frame of reference, it is clear that a discrimination action under § 510 of ERISA is analogous to an employment termination case. The Court in *West v. Butler,* 621 F.2d 240, 245 (6th Cir.1980), broadly examined the purposes behind § 510. The *West* Court noted that "it appears Congress designed § 510 primarily to protect the employment relationship that gives rise to an individual's pension rights," observing that the statute covers discrimination that may "make an employee's work life so unpleasant as to amount to a constructive discharge." Id. at 245. As the *McGhee* Court determined, "no matter how an employment termination suit is characterized, Florida law dictates that the two-year statute applies." 707 F.2d at 1314. This Court consequently finds that the essential federal nature of this ERISA claim is most strongly analogous to a state employment termination suit, and consequently the applicable state statute of limitations is the two year period contained in *Fla.Stat.* § 95.11(4)(c). It is apparent from the Defendant's argument that the only finding that would result in dismissal of the ERISA Counts would be an application of the 180 day limit for handicap discrimi-

nation cases, and dismissal therefore is not warranted.

■ Turning to Count V, the Court recognizes that the Florida District Courts of Appeal are split over the viability of an action for intentional infliction of severe emotional distress. The First, Third, Fourth and Fifth Districts recognize such a claim, *see Dominguez v. Equitable Life Assur. Soc.*, 438 So.2d 58, 59–60 (Fla. 3d DCA 1983) and cases cited therein, while the Second District does not, *see Gmuer v. Garner*, 426 So.2d 972 (Fla. 2d DCA 1982). Siding with the greater weight of authority, this Court finds such an action viable even if unconnected to any other identifiable tort, so long as the conduct is sufficiently outrageous. The Eleventh Circuit in *Mundy v. Southern Bell Telephone & Telegraph Co.*, 676 F.2d 503, 506 (11th Cir.1982), has interpreted job harassment allegations similar to those found here as not meeting the requisite standard for outrageous conduct under Florida law, noting that no Florida case to that time had permitted such an action by an employee against an employer. The Court notes that the instant case, unlike *Mundy*, is more than a pure "employment" case. It also involves a claim for insurance benefits, as did *Dominguez* which postdates *Mundy* and in fact seems to lessen the "outrageous" standard somewhat where benefits claims are involved. Specifically, *Dominguez*, cited with approval two cases dealing with withholding of insurance or disability benefits that, in this Court's estimation, contain no more "outrageous" conduct than the allegations of this Complaint. *See Holmes v. Oxford Chemicals, Inc.*, 510 F.Supp. 915 (M.D.Ala.1981), *aff'd*, 672 F.2d 854 (11th Cir.1982); *Strader v. Union Hall, Inc.*, 486 F.Supp. 159 (N.D.Ill. 1980). Although at a later time this point may be raised again on a motion for summary judgment for factual insufficiency, *see Mundy*, 676 F.2d at 505 n. 4, Count V is sufficient under *Dominguez* to withstand dismissal on a Rule 12(b)(6) motion.

■ As to Count VII for defamation, the Defendant moves to dismiss based upon the Plaintiff's failure to comply with the notice requirement found in *Fla.Stat.* § 770.01. The Court recognizes that *Ross v. Gore*, 48 So.2d 412 (Fla.1950), can be read to support Plaintiff's reasoning, although Judge King reached a contrary interpretation of *Ross* in *Laney v. Knight-Ridder Newspapers, Inc.*, 532 F.Supp. 910 (S.D.Fla.1982). *Laney*'s construction of § 770.10 and *Ross* has recently been soundly rejected by two Florida court opinions holding the statutory notice provision *not* applicable to nonmedia defendants. *See Bridges v. Williamson*, 449 So.2d 400, 401 (Fla. 2d DCA 1984); *Davies v. Bossert*, 449 So.2d 418, 421 (Fla. 3d DCA 1984). Count VII, therefore, need not be dismissed.

The Court has carefully examined each of the Defendants' remaining points urging dismissal, especially the challenges of the sufficiency of the conspiracy allegations, and finds them lacking. Accordingly, it is

ORDERED:

1. The Defendants' Motion To Dismiss is granted to the extent that Count I brought under § 1985(3) is dismissed with prejudice. In all other respects, the Motion is denied.

2. The Defendants' Request For Oral Argument is denied.