983 F.2d 1573
 61 Fair Empl.Prac.Cas. (BNA) 925,
60 Empl. Prac. Dec. P 42,049
Mary Ann VANCE, Plaintiff-Appellee, Cross-Appellant,
v.
SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, a Georgia
Corporation, Defendant-Appellant, Cross-Appellee,
Joyce Foskey, et al., Defendants.
 No. 90-3559.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 5, 1993.
 
 Dana G. Bradford, II, Lee S. Haramis, Baumer, Bradford & Walters, P.A., Jacksonville, FL, for appellant.
 Robert L. Wiggins, Jr., Birmingham, AL, Scott Fortune, Atlantic Beach, FL, for appellee.
 Appeals from the United States District Court for the Middle District of Florida.
 Before TJOFLAT, Chief Judge, FAY and EDMONDSON, Circuit Judges.
 EDMONDSON, Circuit Judge:
 
 
 1
 Mary Ann Vance won a jury verdict on her claim that Southern Bell Telephone and Telegraph Company ("Southern Bell") violated her rights under 42 U.S.C. § 1981. Southern Bell appeals the denial of its motions for summary judgment, directed verdict and judgment notwithstanding the verdict on Vance's section 1981 claim. We reverse.
 
 I. Background
 A. The First Trial: Vance I
 
 2
 This case is detailed in Vance v. Southern Bell Tel. and Tel. Co., 863 F.2d 1503 (11th Cir.1989) ("Vance I "). To review, Mary Ann Vance in 1986 brought an action under 42 U.S.C. § 1981[1] against her former employer, Southern Bell. Vance said that various acts of racial harassment had injured her and driven her from her job.[2] A jury returned a verdict for Vance on her racial harassment claim and awarded multi-million dollar damages, but the district court granted Southern Bell's motion for JNOV or a new trial. Vance v. Southern Bell Tel. and Tel. Co., 672 F.Supp. 1408 (M.D.Fla.1987). On appeal, we reversed the JNOV, but allowed a new trial. 863 F.2d at 1506. The Vance I panel decided that the evidence was sufficient to hold Southern Bell liable for racial harassment, but that the size of the jury's award was "outside the realm of reasonableness" given the evidence. Id. at 1516. This appeal arises from the retrial of the action.
 
 B. The Second Trial
 
 3
 After we decided Vance I, the Supreme Court decided Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).[3] In Patterson the Court held that racial harassment claims "[are] not actionable under § 1981, which covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." 491 U.S. at 179, 109 S.Ct. at 2374. Relying on Patterson, Southern Bell moved for summary judgment. The district court acknowledged the "inescapable conclusion that the holding in Patterson would preclude maintenance of this suit if it were filed today," but refused to apply the Patterson holding retroactively based on the equitable considerations outlined by the Supreme Court in Chevron Oil v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).[4]
 
 
 4
 This case then went to a jury trial in April 1990. The jury awarded Vance about a million dollars in compensatory and punitive damages on her section 1981 claim. The district court entered judgment for Vance and denied Southern Bell's renewed motions for directed verdict, JNOV or a new trial. In June 1990, Southern Bell appealed the section 1981 rulings.
 
 
 5
 In November 1991, while this appeal was pending, Congress enacted the Civil Rights Act of 1991, which, among other things, enlarges the range of behavior subject to section 1981 to include the "performance, modification, and termination" of contracts.[5] Under Patterson, plaintiffs alleging most kinds of post-hiring discrimination were limited to the set of equitable remedies provided under Title VII.[6] But under the Civil Rights Act of 1991, such plaintiffs may sue under section 1981 for damages.
 
 II. Issues Presented
 
 6
 We must decide two related issues: First, whether the district court erred by refusing to apply Patterson retroactively; and second, whether the Civil Rights Act of 1991 overrules Patterson retroactively. We hold that the Supreme Court's decision in Patterson v. McLean Credit Union, which interpreted 42 U.S.C. § 1981 as it existed during all times material to this action, applies retroactively and barred Vance's section 1981 claim. We further hold that the Civil Rights Act of 1991, which extended the scope of section 1981 to performance and termination of contracts, applies prospectively and, therefore, has no bearing on Vance's bar under Patterson.[7]
 
 III. The 42 U.S.C. § 1981 Claim
 
 7
 A. The Nature of Vance's 42 U.S.C. § 1981 Claim
 
 
 8
 Vance claims that Southern Bell discriminated against her during her employment at Southern Bell's Western Way service facility between August 1984 and October 1985. Supra note 2. Vance further says that by these "cumulative actions," Southern Bell effectively "terminated" her employment. R.Vol. 6-208, p 46. We understand Vance's claim to state three separate theories of liability: racial harassment, discriminatory denial of a transfer, and constructive discharge.
 
 
 9
 Vance's allegations describe the kinds of "postformation ... incidents relating to the conditions of employment" that were unactionable under section 1981. Patterson, 491 U.S. at 179, 109 S.Ct. at 2374. Vance's allegations about her initial months of work at the Western Way facility describe the same kind of behavior--post-hiring racial harassment--that the Court held to be outside the scope of section 1981 in Patterson. Id. 491 U.S. at 177, 109 S.Ct. at 2373. In a similar way, Vance's claim that Southern Bell wrongfully refused to transfer her to a different assignment within the company is unactionable under section 1981 because such "lateral transfers [do] not rise 'to the level of an opportunity for a new and distinct relation between the employee and the employer.' " Jones v. Firestone Tire and Rubber Co., 977 F.2d 527 (11th Cir.1992) (Tjoflat, C.J.), quoting Patterson, 491 U.S. at 185, 109 S.Ct. at 2377. And it is settled in this circuit that, under the Patterson rule, section 1981 provides no relief on claims of discriminatory discharge. E.g., Pearson v. Macon-Bibb Co. Hosp. Auth., 952 F.2d 1274, 1277-78 (11th Cir.1992); Weaver v. Casa Gallardo, 922 F.2d 1515, 1519-20 (11th Cir.1991). Thus we conclude that Vance's section 1981 claim is among the kinds of post-hiring claims that Patterson bars.[8]
 
 
 10
 B. Retroactive Application of Patterson v. McLean Credit Union
 
 
 11
 The district court declined to apply Patterson retroactively based on the pragmatic and equitable considerations set out in Chevron Oil v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). We think the Supreme Court's recent decision in James B. Beam Distilling Co. v. Georgia, --- U.S. ----, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), forecloses Chevron Oil analysis in this case and commands retroactive application of Patterson.
 
 
 12
 In Beam, the Supreme Court held that if the court applies a rule to the parties in the case in which the rule is announced, the rule must be applied retroactively to cases pending at the time the rule issues. "[T]he question is whether it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so. We hold that it is, principles of equity and stare decisis here prevailing over any claim based on a Chevron Oil analysis." Beam, --- U.S. at ----, 111 S.Ct. at 2446. Under Beam, the dispositive question is whether the Patterson court applied its interpretation of section 1981's "make and enforce" language to the parties in the Patterson case. See Lufkin v. McCallum, 956 F.2d 1104, 1106-07 (11th Cir.1992) (applying Beam ).
 
 
 13
 The Court in Patterson did apply its interpretation of section 1981 to the litigants there. See Patterson, 491 U.S. at 177-80, 189, 109 S.Ct. at 2373-74, 2379 (affirming court of appeals' dismissal of racial harassment claim as unactionable under section 1981). So, even assuming for the sake of argument that Patterson did announce a new rule (as opposed to declaring what section 1981 always meant), that rule would apply to all cases then pending, such as this one.
 
 
 14
 Based on the principles announced in Beam, we conclude that the district court erred in refusing to apply Patterson v. McLean Credit Union to dismiss the section 1981 claim in this case.
 
 
 15
 C. Prospectivity of the Civil Rights Act of 1991
 
 
 16
 The remaining question is whether the Civil Rights Act of 1991 applies retroactively to overrule Patterson to save Vance's section 1981 claim. One effect of the 1991 Act, in cases where it applies, is to make the rule in Patterson obsolete by statutorily adding certain categories of post-hiring discrimination to the list of practices liable to suit under section 1981. In Baynes v. AT & T Technologies, Inc., 976 F.2d 1370 (11th Cir.1992), we decided that section 101 has no retroactive application in cases in which entry of judgment predates the effective date of the Act.[9] Because judgment in this case was entered in May 1990, before the effective date of the Act,[10] the Act does not apply retroactively to Vance's action.[11]
 
 IV. Conclusion
 
 17
 The district court's order denying Southern Bell's motion for summary judgment on Count I, the 42 U.S.C. § 1981 claim, is REVERSED.
 
 
 18
 FAY, Circuit Judge, concurring in part and dissenting in part:
 
 Part I
 
 19
 I reluctantly concur with the majority that the existing case law compels both retroactive application of Patterson[1] and prospective application of the Civil Rights Act of 1991, thus eliminating Vance's § 1981 claim. The law of this circuit was settled on these two issues in Baynes v. AT & T Technologies, Inc., 976 F.2d 1370 (11th Cir.1992) (per curiam).[2] Nevertheless, I cannot help but feel that the application of the rules articulated in Baynes lead, in Mary Ann Vance's case, to a manifest injustice. Two all-white juries, on two separate occasions, have heard all of the evidence and concluded that Southern Bell discriminated against Mrs. Vance and awarded her multi-million dollar verdicts on her claim. We reversed her first verdict as excessive three months before the decision in Patterson was announced. Now, her second verdict is ground to dust between the upper millstone of the decision not to apply the Civil Rights Act of 1991 to her case, and the lower millstone of Patterson, a decision on which no one in this case could be said to have relied.[3] Much of what I could say on the fairness question has already been said by others, so I will not belabor the point here. See, e.g., Mozee v. American Commercial Marine Service Co., 963 F.2d 929, 940 (7th Cir.1992) (Cudahy, J. dissenting).[4] I would add only that, for me, this application of Patterson also raises troubling questions of separation of powers.
 
 
 20
 In Patterson the Supreme Court was engaging in statutory interpretation, not constitutional interpretation, when it interpreted § 1981 to preclude the cause of action upon which Vance has relied. Theoretically, the Court's role in statutory interpretation is to uphold legislative intent, not to make new law. Nevertheless, new interpretations of statutes often have that practical effect, as Patterson did when it sub silentio overruled prior court of appeals opinions (such as our own)[5] interpreting § 1981 more expansively. Judicial "law making" is an inevitable byproduct of our system,[6] albeit one that, at times, seems to be barely tolerated--like a relative you'd rather not acknowledge--because it is difficult to square with the theory of the courts' role. But whatever theoretical difficulties judicial law making poses in the ordinary course of things, the practice is more troubling still when Congress rejects the Supreme Court's interpretation of a statute. It is difficult to argue then that the court is merely effectuating the Congress' intent. In that case, I would think our constitutional role is to limit the operation of that erroneous interpretation, not expand it.
 
 
 21
 To keep Patterson on "life support" by applying it to cases beyond those tried in reliance upon it, like Baynes, or for which it provided the governing standard at the times the acts occurred, makes the Court's reassurance in Patterson, that "Congress remains free to alter what we have done," ring hollow, Patterson, 491 U.S. at 173, 109 S.Ct. at 2370. Whatever Congress' intent on retroactivity,[7] it is clear Congress intended to alter what the Court had done. Disregarding that aspect of the legislative intent and focusing exclusively on the intent with regard to retroactivity might well be viewed as a refusal to implement Congressional will or as not reflecting the appropriate respect for our co-equal branch.
 
 
 22
 Finally, while I share the majority's concerns for equity and stare decisis, it is far too late in the day to ensure that everyone similarly situated will be treated equally with respect to § 1981.[8] Moreover, consistency is only one of many values with which we must be concerned. As we have said elsewhere, " 'justice is better than consistency.' " Westbrook v. Zant, 743 F.2d 764, 768 (11th Cir.1984) (citations omitted).[9] Nevertheless, while I believe that upholding Vance's verdict in this case would be just, I cannot say that the majority has misread the precedent or has clearly erred, therefore I concur in its ruling.
 
 Part II
 
 23
 I cannot join the majority in its assessment of Vance's state law claim. See majority opinion supra at n. 7. The District Court decided that the tort of intentional infliction of emotional distress "is incident specific,"[10] and that as the judge found "no incident subsequent to July of '85," the statute of limitations barred Vance's claim. That ruling is erroneous. Under the Federal Rules of Civil Procedure Vance's amended complaint relates back to her original filing because there is no question that the basis for her claim of intentional infliction of emotional distress arises out of the same "conduct, transaction, or occurrence" as her § 1981 claim. Fed.R.Civ.Pro. 15(c).[11] See also Forzley v. Avco Corp., 826 F.2d 974, 981 (11th Cir.1987). Southern Bell's argument to the contrary is simply spurious.[12]
 
 
 24
 The only thing that is changed by Vance's amended complaint is some of the legal inferences to be drawn from the same conduct. Vance's amendment does not so vary from her original complaint that Southern Bell did not have notice as to the facts alleged or the evidence which would be relevant. Southern Bell cannot reasonably assert that it was prejudiced by her amendment. Indeed, because of the change in the law, if anyone is prejudiced it is Vance. Therefore, she ought to be allowed the opportunity to amend her complaint to assert a claim that she understandably did not assert before, as long as Southern Bell was given "fair notice of the general fact situation out of which" her claim arose. Forzley, 826 F.2d at 981 (citation omitted).
 
 
 25
 As the United States Supreme Court noted in Lewis v. Continental Bank Corp., 494 U.S. 472, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) in a related context:
 
 
 26
 Our ordinary practice in disposing of a case that has become moot on appeal is to vacate the judgment with directions to dismiss. However, in instances where the mootness is attributable to a change in the legal framework governing the case, and where the plaintiff may have some residual claim under the new framework that was understandably not asserted previously, our practice is to vacate the judgment and remand for further proceedings in which the parties may, if necessary, amend their pleading or develop the record more fully.
 
 
 27
 Id. at 482, 110 S.Ct. at 1256 (emphasis added) (citations omitted). This quote reflects the liberal amendment policy that has been the practice of the federal courts. See also Comments to 1991 amendments of Rule 15(c) ("Whatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim.") (indicating that, notwithstanding the supremacy of federal procedural rules in federal court, the courts are to use whichever rule allows more liberal relation back).
 
 
 28
 The District Court also ruled as a matter of law that Vance's claims did not rise to the level of "outrageousness" necessary to support her claim. The Florida Supreme Court has stated the necessary standard as follows:
 
 
 29
 Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
 
 
 30
 Eastern Airlines, Inc. v. King, 557 So.2d 574, 576 (Fla.1990) (quoting Restatement (Second) of Torts, § 46 (1965), comment d). If the conduct which two juries found that Southern Bell engaged in does not meet this standard, I can scarcely conceive of the case which would.
 
 
 31
 The question of whether a complaint will support a cause of action sufficient to go to the jury on the issue of intentional infliction of emotional distress is initially one for the judge. But the district court judge in this case did not appear to correctly apply the standard employed by the Florida courts.
 
 
 32
 Whether the conduct is outrageous enough to rise to the level required by the tort may be decided as a question of law when the facts of a case can under no conceivable interpretation support the tort, but where significant facts are disputed, or where differing inferences could reasonably be derived from undisputed facts, the question of outrageousness is for the jury to decide.
 
 
 33
 Williams v. Minneola, 575 So.2d 683, 692 (Fla.Dist.Ct.App.1991) (citations omitted). See also Mundy v. Southern Bell Tel. & Tel. Co., 676 F.2d 503, 505 n. 4 (11th Cir.1982) (per curiam) (degree of outrageousness is a mixed question of law and fact). Cf. McAlpin v. Sokolay, 596 So.2d 1266, 1269-70 (Fla.Dist.Ct.App.1992) (holding that question is one for the court, but nevertheless reversing trial court's dismissal of claim, suggesting that standard for the judge is whether any reasonable juror could find the conduct sufficiently outrageous); with Baker v. Florida National Bank, 559 So.2d 284, 287 (Fla.Dist.Ct.App.1990) (question is one for the court, no elaboration on standards to guide judge). There is no question that there were disputed facts in this case,[13] quite apart from the issue of whether the facts could under "no conceivable interpretation support the tort"[14] as would seem necessary to support the district judge's directed verdict.
 
 
 34
 Although the transcript does not reveal the authority on which the district court relied, the majority opinion cites only two[15] cases to support this ruling; Lay v. Roux Laboratories, Inc., 379 So.2d 451, 452 (Fla.Dist.Ct.App.1980) (per curiam), and Mundy, 676 F.2d at 505-506. I fail to see how either of these cases support this position. Not only are both cases over 10 years old,[16] (a point to which I will return later), neither can be said to stand for much beyond its own facts.
 
 
 35
 In Lay a Florida court of appeals merely determined that the facts in that case would not sustain a claim of intentional infliction of emotional distress.[17] The plaintiff claimed that her supervisor threatened her with the loss of her job and " 'began using humiliating language, vicious verbal attacks, racial epithets and called [her] a "nigger" ' when an argument arose concerning a parking space." Id. at 452. There is no indication in the recitation of the facts that any more than this single altercation was at issue there, or that any pattern of harassment was alleged. This is a far cry from the pattern of conduct in which Vance alleged that Southern Bell engaged. Lay cannot reasonably be read to hold that racially hostile misconduct can never support a claim of intentional infliction of emotional distress, and if it can not be so read I fail to see how it supports the district court's ruling.
 
 
 36
 Mundy is of even less value to the majority. Mundy is precedent from this circuit.[18] At that time it was not even clear "whether Florida recognize[d] an independent cause of action for intentional infliction of emotional distress," Mundy, 676 F.2d at 505, let alone what sort of conduct would meet the standard. The majority suggests that the relevance of Mundy is that Florida rejects this cause of action in the employment context based on this court's survey of Florida precedent. In an aside the panel in Mundy observed that, "although there are numerous Florida cases in which plaintiffs have made claims of intentional infliction of emotional distress against their former employers ... we find none, in which the plaintiff has prevailed." Id. at 506. This is not only far short of a pronouncement that employees could never recover on this theory, it is also no longer true.
 
 
 37
 Since Mundy was decided the law has undergone rather significant expansion by the Florida Supreme Court. First, in Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277, 278 (Fla.1985) the supreme court clarified that intentional infliction of emotional distress was indeed a separate cause of action. Later, in Byrd v. Richardson-Greenshields Securities, Inc., 552 So.2d 1099, 1103-04 (Fla.1989) the court held workers could sue their employers for sexual harassment under a theory of intentional infliction of emotional distress.[19] Id. at 1104. Thus, in McCarson and Byrd, the Florida Supreme Court clarified the question in Mundy and provided an example from the state's highest court that an employee could sue under this theory.[20]
 
 
 38
 Justice Barkett, writing for the majority in Byrd found that "[p]ublic policy now requires that employers be held accountable in tort for the sexually harassing environments they permit to exist, whether the tort claim is premised on a remedial statute or on the common law." Id. She based this conclusion on the extensive state and federal civil rights legislation, as well as Supreme Court precedent, which addressed sexual harassment or had been interpreted to encompass it. Id. at 1102-04.
 
 
 39
 Given that the recognition of sexual harassment as an injury to civil rights is of relatively recent vintage, (compared to racial harassment), I find it unlikely that under current Florida law Vance's claims would be deemed too insubstantial to support her claim. Every factor cited by Justice Barkett which supported the finding in Byrd applies with equal, if not more, vigor to racial harassment, if only because the public policy condemning racism is of even longer standing.[21]
 
 
 40
 Mary Ann Vance testified to a continuous and oppressive pattern of intimidation and harassment on the part of her fellow workers and supervisors at Southern Bell. That Southern Bell would allow such an atmosphere to develop, or having been apprised of it, fail to take the firmest possible steps to eradicate it, is by itself outrageous. But of all of the incidents, two stand out as particularly horrific--the nooses twice left at Vance's work station. The noose in this context is a symbol not just of racial discrimination or of disapproval, but of terror. Those of us for whom a particular symbol is just that--a symbol--may have difficulty appreciating the very real, very significant fear that such symbols inspire in those to whom they are targeted. No less than the swastika or the Klansman's hood, the noose in this context is intended to arouse fear.[22] If a jury would not cry "Outrageous!" upon hearing these facts (and I think these juries did through their verdicts), I cannot think of a set of facts for which it would.
 
 
 41
 For all of the foregoing reasons I believe we should remand this case for retrial on the state law claim, and therefore I respectfully DISSENT. Subject to my reservations expressed in Part I, I CONCUR in the majority's resolution of Vance's § 1981 claim.
 
 
 
 [1]
 42 U.S.C. § 1981 contains section 1 of the Civil Rights Act of 1866. It provides:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 42 U.S.C.A. § 1981(a) (West 1981 & Supp.1992).
 
 
 [2]
 Vance claims Southern Bell violated section 1981 by: (1) hanging a rope "noose" over her work station shortly after she started work in August 1984; (2) suspending her in September 1984 for an offense for which white employees were not suspended; (3) "subjecting [Vance] ... to a physical altercation with a white [female] co-worker" in October 1984 and disciplining only Vance for the incident; (4) sabotaging her work on a pay phone; (5) refusing to treat her equally in disciplinary proceedings unless she dismissed charges of racial discrimination then pending before a local government agency; (6) refusing to purge stale disciplinary actions from her file; (7) "confining her to the supervision of the white woman who attacked her in October ... causing her to suffer a nervous breakdown on the job"; (8) "intentionally transporting [Vance] to the wrong hospital during her nervous breakdown in an effort to cause her further trauma"; (9) refusing Vance's doctor's January 1985 request to transfer Vance to a different department; (10) continuing to refuse to transfer Vance, despite her doctor's requests, until October 1985; and (11) constructively discharging her on October 14, 1985 when she was physically and medically unable to continue working under her tormentors without a transfer to a department which did not harass or intimidate her." Id
 
 
 [3]
 In October 1987, some six months after the jury rendered its verdict in Vance I, the Supreme Court granted certiorari in Patterson. Id., cert. granted, 484 U.S. 814, 108 S.Ct. 65, 98 L.Ed.2d 29 (1987). Fifteen months later, with Patterson still undecided in the Supreme Court, this court decided Vance I. Vance I, 863 F.2d 1503 (11th Cir.1989)
 
 
 [4]
 R.Vol. 10-302
 
 
 [5]
 See 42 U.S.C.A. § 1981(b) (West 1981 & Supp.1992), codifying section 101 of the Civil Rights Act of 1991. Section 101 of the Civil Rights Act of 1991, enacted on November 21, 1991, amended 42 U.S.C. § 1981. The 1991 Act redefines the phrase "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship," and protects these contractual rights "against impairment by nongovernmental discrimination and impairment under color of state law." See 42 U.S.C.A. § 1981(b), (c) (West 1981 & Supp.1992)
 
 
 [6]
 See 42 U.S.C. §§ 2000e et seq. Mary Ann Vance made no claim under Title VII
 
 
 [7]
 We must also decide Vance's appeal of the dismissal of a state law claim for intentional infliction of emotional distress. We see no error. In Florida, "[t]he issue of whether or not the activities of the defendant rise to the level of being extreme and outrageous so as to permit a claim for intentional infliction of emotional distress is a legal question in the first instance for the court to decide as a matter of law." Baker v. Florida Nat'l Bank, 559 So.2d 284, 287 (Fla.Dist.Ct.App.1990). As we read Florida's decisions, the acts Vance alleged do not rise to the level of extremity or outrageousness required to sustain Vance's claim for intentional infliction of emotional distress. See, e.g., Lay v. Roux Laboratories, Inc., 379 So.2d 451, 452 (Fla. 1st DCA1980) (although "extremely reprehensible," racially hostile misconduct did not rise to the degree of "outrageousness or atrociousness" required to sustain a claim). See also Mundy v. Southern Bell Tel. & Tel. Co., 676 F.2d 503, 505-506 (11th Cir.1982) (surveying Florida cases rejecting claims in employment context); Studstill v. Borg Warner Leasing, 806 F.2d 1005, 1007 (11th Cir.1986) (This court is bound by decisions of Florida's intermediate courts of appeals absent "some persuasive indication that the state's highest court would decide the issue otherwise."). Therefore, we affirm the district court's order directing a verdict for Southern Bell on the state law claim
 
 
 [8]
 This court decided Vance I when Patterson v. McLean Credit Union was pending before the Supreme Court. In Vance I, we saw a distinction between the constructive discharge theory of Vance's case and the "pure" harassment claims of the plaintiff in Patterson. Vance I, 863 F.2d at 1509 n. 3. But there has been an intervening change in the law that alters what some may have seen as the law of this case. See Westbrook v. Zant, 743 F.2d 764, 768-69 (11th Cir.1984) ("law of the case" doctrine subject to intervening change in controlling law). After the Supreme Court's opinion in Patterson, no basis exists in section 1981 cases to sustain the distinction between claims of "pure" harassment and claims which allege that acts of harassment caused the discharge of the employee. Given the sweep of the words of the Patterson opinion, all such claims would involve "postformation" contractual activity outside the protection of section 1981. See Patterson, 491 U.S. at 179, 109 S.Ct. at 2374 (Section 1981 "covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process.")
 
 
 [9]
 Almost every circuit that has addressed the retroactivity of the Civil Rights Act of 1991 has concluded that the 1991 Act does not apply retroactively. See Baynes v. AT & T, supra; Gersman v. Group Health Ass'n, Inc., 975 F.2d 886 (D.C.Cir.1992); Johnson v. Uncle Ben's Inc., 965 F.2d 1363 (5th Cir.1992), petition for cert. filed, 61 U.S.L.W. 3356 (U.S. Sept. 29, 1992) (No. 92-737); Mozee v. American Commercial Marine Svc. Co., 963 F.2d 929 (7th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 207, 121 L.Ed.2d 148 (1992); Hicks v. Brown Group, Inc., 982 F.2d 295 (8th Cir.1992) (en banc); Vogel v. City of Cincinnati, 959 F.2d 594 (6th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 86, 121 L.Ed.2d 49 (1992). But see Davis v. City and County of San Francisco, 976 F.2d 1536 (9th Cir.1992)
 In Davis, a panel of the Ninth Circuit inferred from sections 109(c) and 402(b) of the Act that Congress did intend the Act to apply retroactively except in specific kinds of cases. Section 109 makes Title VII applicable to U.S. citizens employed in foreign countries, overruling EEOC v. Arabian Amer. Oil Co., --- U.S. ----, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991); section 109(c) expressly makes section 109 purely prospective. Pub.L. No. 102-166, § 109(c) (1991). Section 402(b) makes the Act inapplicable to the Wards Cove litigation. See Pub.L. No. 102-166, 105 Stat. 1071, § 402(b) (1991); Wards Cove Packing Co. v. Antonio, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); 137 Cong.Rec. S15950-968 (daily ed. Nov. 5, 1991) (Senate discussion preceding vote on section 402(b)). Considering these two provisions, the Ninth Circuit decided that to conclude the whole Act applies only prospectively would violate the general canon of construction that statutes be interpreted "so as not to render one part inoperative" and so that "no provision ... be construed to be entirely redundant." Davis, 976 F.2d at 1551 (citations omitted).
 Recalling that there are exceptions to almost all general propositions, we cannot accept the Davis reasoning. The negative inference (that Congress intended general retroactivity) that the Davis court drew from sections 109(c) and 402(b) is an unhelpful legal fiction given the reality of a sharp conflict between legislators on the retroactivity of the Act generally. See Davis, 976 F.2d at 1554 (collecting citations to legislators' divergent views). We think it makes little sense to know that Congress never acted on retroactivity and then to infer from a couple of provisions--here, distinctive provisions that made prospectiveness especially plain for certain situations--that Congress generally "envisioned" or "intended" retroactive application as a general matter. Cf. Davis, 976 F.2d at 1552-56.
 Congress probably only intended for sections 109(c) and 402(b) to minimize, in specific instances, the risk posed by uncertain outcomes in the courts on the general retroactivity issue. See Gersman, supra, 975 F.2d at 890 (sections may be viewed as an "insurance policy"); Johnson, supra, 965 F.2d at 1373 (sections may evince no general conclusion about general retroactive application). And when a court holds that the Act generally applies prospectively, the court does not render sections 109(c) and 402(b) "entirely redundant" nor inoperative. Those sections operate to ensure that, although some court might hold the Act retroactive as a general matter, no court may hold that the Act applies in Wards Cove or in a section 109 case where the conduct predates enactment. With that understanding of sections 109(c) and 402(b), and given the abundant evidence that Congress never agreed on the retroactivity of the Act in general, but instead left that issue to the courts, e.g., compare 137 Cong.Rec. S15483-485 (daily ed. Oct. 30, 1991) (interpretive memorandum of Sen. Danforth) with 137 Cong.Rec. S15485 (daily ed. Oct. 30, 1991) (statement of Sen. Kennedy), we decline to infer general "intent" on retroactivity from sections 109(c) and 402(b).
 
 
 [10]
 Section 402 of the Civil Rights Act of 1991 provides that the Act took effect on its date of enactment, November 21, 1991, unless otherwise provided
 
 
 [11]
 We recognize that Vance's section 1981 claims went to trial despite Patterson, while Baynes's section 1981 claims, in contrast, fell to Patterson in a summary judgment. Baynes, 976 F.2d at 1372. But in view of all the Bradley factors, this distinction leads us to no different conclusion in this case about the retroactivity of the Civil Rights Act of 1991. See Baynes, 976 F.2d at 1373-75, applying Bradley v. School Board of Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). In addition, the principle that "litigants in similar situations should be treated the same," Beam, --- U.S. at ----, 111 S.Ct. at 2444, dissuades us from a different view of the Act in this case
 
 
 [1]
 In advocating purely retroactive application of case law, (as opposed to statutes) Justice Blackmun, in James B. Beam Distilling Co. v. Georgia, --- U.S. ----, ----, 111 S.Ct. 2439, 2450, 115 L.Ed.2d 481 (1991) (Blackmun, J. concurring ), said this policy "derives from the integrity of judicial review, which does not justify applying principles determined to be wrong to litigants who are in or may still come to court." Id. at ----, 111 S.Ct. at 2450 (emphasis added). But of course when we apply Patterson retroactively, without viewing it from the perspective of its repudiation by Congress, that is exactly what we do. We are not only applying a principle determined to be wrong, but we do so in a context where this principle was not relied upon by anybody in the case as the relevant law. It is true, as Justice Blackmun points out, that courts with the option to apply new rules prospectively only "dodge the stare decisis bullet," and perhaps are thereby encouraged to disrupt "settled expectations" more often. Id. at ----, 111 S.Ct. at 2450. However, it hardly advances his concern for settled expectations to apply a law retroactively that was not only contrary to those settled expectations, but is also now repudiated. Such a circumstance should be an exception to the general rule
 
 
 [2]
 In my view, the majority perhaps too hastily dismisses, in footnote 11 of its opinion, the circumstances of this case which distinguish it from Baynes. I would be inclined, for all of the reasons noted in this opinion, to find the distinction noted by the majority as dispositive, entitling Vance to affirmance of her verdict. Nor do I believe that this result would offend the principles in Bradley. However, Bradley is not the only applicable precedent, and Bowen would compel the opposite result. Although this Circuit has in general cleaved to the Bradley rule, see, e.g., Federal Deposit Ins. Corp. v. 232, Inc., 920 F.2d 815, 818 n. 4 (11th Cir.1991) (per curiam), we are not free to disregard Bowen. See Litman v. Massachusetts Mutual Life Ins. Co., 825 F.2d 1506, 1509 (11th Cir.1987) (en banc). In the absence of more guidance from the Supreme Court as to the choice between Bradley and Bowen, it is impossible to say that the majority's conclusion is clearly wrong, even if I disagree with its interpretation of what Bradley requires in this case
 
 
 [3]
 There is no dispute that the discrimination and harassment of which Southern Bell was accused, was, is and always has been illegal, irrespective of any retroactivity given to either the Civil Rights Act of 1991 or Patterson. The only thing altered by these two changes in the law was the nature of the remedy--that is, the availability of damages beyond the relatively limited equitable remedies provided by Title VII. (In other circumstances we have held that changes in the law affecting only the remedy are applied retroactively. See, e.g., Birnholz v. 44 Wall Street Fund, Inc., 880 F.2d 335, 339 (11th Cir.1989) (per curiam)). Thus, it cannot be said that anyone in this case relied on Patterson, either for knowledge of what the law prohibited or for estimating liability in the event the law was broken. As Justice Scalia noted in his concurrence in Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 840, 110 S.Ct. 1570, 1579, 108 L.Ed.2d 842 (1990) (Scalia, J. concurring): "The principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal." Id. at 855, 110 S.Ct. at 1586
 
 
 [4]
 What Judge Cudahy wrote there is equally true of this case. "Patterson was the effective law of the land at no time that is relevant to the disposition of this case. No one relied upon it when liability was incurred in this case, nor can we rely on it now that it has been overruled by Congress." Mozee, 963 F.2d at 941 (Cudahy, J. dissenting)
 Other objections which could be raised to the majority's reasoning have been discussed in great detail by Judge Fletcher of the Ninth Circuit in her majority opinion in Davis v. City and County of San Francisco, 976 F.2d 1536 (9th Cir.1992) and by Judge Wald of the D.C. Circuit in her dissent in Gersman v. Group Health Assoc., 975 F.2d 886, 900 (D.C.Cir.1992) (Wald, J. dissenting). However, these interpretations have not been adopted by this circuit.
 
 
 [5]
 See, e.g., Vance I, 863 F.2d at 1509 n. 3 (citing cases holding that the legal elements of disparate impact cases are identical under Title VII and § 1981)
 
 
 [6]
 See James B. Beam Distilling Co. v. Georgia, --- U.S. ----, ----, 111 S.Ct. 2439, 2449, 115 L.Ed.2d 481 (1991) (White, J. concurring) (criticizing what he took to be Justice Scalia's suggestion that although judges do "make" the law in a real sense they ought to pretend that they do not). But see id., at ----, 111 S.Ct. at 2451 (Scalia, J. concurring in the judgment) (defending the traditional stance that courts "find" the law not "make" it as one of the checks on judicial decision-making that forms an integral part of the constitutional separation of powers). Notably, although the majority relies on Beam for its retroactive application of Patterson, in Beam the Court was dealing with the retroactive application of its interpretation of constitutional law--an area given over almost exclusively to the courts. In contrast, Patterson was a judicial interpretation of a statute
 
 
 [7]
 The majority in Gersman aptly noted that looking at the legislative history of the Civil Rights Act of 1991 provides no guidance on the issue of Congress's intent regarding retroactivity. 975 F.2d 886, 890-92 (D.C.Cir.1992)
 
 
 [8]
 Cf. Baynes (Patterson bars 1981 claim) with McGinnis v. Ingram Equip. Co., 918 F.2d 1491, 1497 (11th Cir.1990) (en banc) (Patterson does not bar 1981 claim because not timely raised by defendant, even though Patterson had not been decided at time of trial), and Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1519 (11th Cir.1991) (remanded in light of Patterson, even though defendant did not argue that case at trial, because plaintiff did not argue that defendant had waived his right to argue Patterson on appeal by failing to raise it below)
 
 
 [9]
 Even where the law has not undergone such rapid and dramatic shifts, as has the interpretation of § 1981, our system of adjudication tolerates a great deal of disparity of outcome, most notably via the jury system itself, but also through the operation of the doctrines of res judicata, collateral estoppel and the law of the case
 
 
 [10]
 Because the District Judge ruled orally on Southern Bell's motion for a directed verdict at the close of the plaintiff's case it is not clear what precedent he was relying on for this ruling. However, whatever that precedent it would seem to be discredited by the Florida Supreme Court's ruling in Byrd v. Richardson-Greenshields Securities, Inc., 552 So.2d 1099 (Fla.1989). Although the Florida Supreme Court did not address this question directly, its discussion obviously reflects an understanding that such claims need not be "incident specific" in the sense that each incident, taken alone must meet the outrageousness standard. This understanding is also consistent with our own previous statement in Vance I. "A hostile environment claim is a single cause of action rather than a sum total of a number of mutually distinct causes of action to be judged each on its own merits." 863 F.2d at 1511
 
 
 [11]
 The version of Rule 15(c) effective at the time Mary Ann Vance amended her pleading read as follows:
 Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.
 
 
 [12]
 Southern Bell's argument that the claims are factually distinct is confined to the following statement in its brief. "[T]he distinctions between these claims are too numerous to list in an appellate brief. Suffice it to say they concern totally distinct subject matter, and are not even similar in genesis, as one is statutory and the other arises at common law." Appellant/Cross-appellee's Brief at 49. Suffice it to say, the appellant's conclusions do not strike me with the crystal clarity appellant believes they possess
 
 
 [13]
 Even at this late stage in the litigation Southern Bell continues to dispute the facts and attempts to relitigate them
 
 
 [14]
 This would be the case were Florida to have an employment, or other, "exception" to the intentional infliction of emotional distress cause of action. In every such case you would have a failure to state a cause of action on the face of the complaint because "no conceivable interpretation" of the facts could support the tort because of the exception. Even though no such "exception" is articulated, a de facto exception appeared to exist prior to 1989, in that employees seldom won such cases. This is the proposition for which the majority cites Mundy. However, that is clearly no longer the state of the law in Florida
 
 
 [15]
 It further cites Studstill v. Borg Warner Leasing, 806 F.2d 1005, 1007 (11th Cir.1986) for the proposition that "this court is bound by decisions of Florida's intermediate courts of appeal absent 'some persuasive indication that the state's highest court would decide the issue otherwise.' " See majority opinion supra n. 7. In this case, I believe there is such a "persuasive indication."
 
 
 [16]
 The majority's reliance on these precedents is not dubious merely because the precedents are old, some of our most venerable principles are articulated in cases hundreds of years old. Rather, the cases on which it relies are of diminished value in light of the changes in the law. This reliance is even more surprising because there is no dearth of more current case law
 
 
 [17]
 While it is always possible to argue that a case is limited to its facts, in some cases it is a fairer reading than others. In Lay, the court gave no hint that its ruling was to extend beyond the very limited facts of the case. Because, factually, the two cases do not appear similar, Lay is of little value to anticipating how a Florida court would view Vance's claim
 
 
 [18]
 The federal courts' interpretation of Florida law in the face of ambiguity, must necessarily give way once the state's highest court removes that ambiguity. Of course, determining when an ambiguity exists is no easy task. Thus, "[f]ederal courts looking to Florida law have arrived at various conclusions about where this state stands on the issue [of intentional infliction of emotional distress]. Often citing to the same cases, it has been said that Florida recognizes the cause of action, does not, or has not made up its mind." Dominguez v. Equitable Life Assur. Soc., 438 So.2d 58, 59 n. 2 (Fla.Dist.Ct.App.1983) (citations omitted)
 
 
 [19]
 The principal holding of the case was that the workers' compensation exclusivity rule did not preclude the maintenance of a separate cause of action for job-related sexual harassment
 
 
 [20]
 Byrd also rendered Studstill obsolete because the substantive holding in Studstill was that sexual harassment suits were barred under Florida law by the workers' compensation exclusivity rule. Id. 806 F.2d at 1007-08
 
 
 [21]
 This fact is relevant to the extent that the standard is supposed to be gauged by the standards of the average member of the community. Presumably, the longer the particular behavior has been societally condemned, the more likely that behavior is to provoke the outraged response. Sadly, this assumption may be more of a projection of what we think the average member of the community "ought" to think rather than what he or she does think. "[O]utrageousness is not only highly subjective, but also an extremely mutable trait.... Most of the examples contained in the Restatement comments do not overwhelm the reader with their 'atrociousness' and 'utter intolerability'...." Williams v. Minneola, 575 So.2d 683, 692 (Fla. 5th DCA 1991)
 
 
 [22]
 It cannot be said, even today, that Black Americans are free to disregard threats of racial violence as idle ones