**Delphine Edwards GOLDSMITH, Plaintiff–Appellee,**

v.

**CITY OF ATMORE; Howard Shell, individually and in his official capacity as Mayor of City of Atmore, Alabama, Defendants–Appellants.**

**No. 92–6429.**

United States Court of Appeals, Eleventh Circuit.

Aug. 4, 1993.

Joe Thompson, Brewton, AL, Susan Williams Reeves, Birmingham, AL, for defendants-appellants.

Ronnie L. Williams, Mobile, AL, for plaintiff-appellee.

Before FAY, Circuit Judge, JOHNSON, Senior Circuit Judge, and MERHIGE *, Senior District Judge.

JOHNSON, Senior Circuit Judge:

This case arises on appeal following a jury verdict in favor of the plaintiff-appellee Delphine Edwards Goldsmith on her claim that her employer, the City of Atmore ("the City"), and its mayor, Howard Shell, transferred her to a different employment position in retaliation for her threats to file a discrimination charge with the Equal Employment Opportunity Commission ("the EEOC"). The City and Mayor Shell appeal the district court's entry of judgment in accordance with the jury verdict. For the reasons that follow, we reverse the district court's entry of judgment and remand the case back to the district court for further proceedings.

## I. STATEMENT OF THE CASE

### A. *Factual Background*

In October 1979, Goldsmith, a black female, began working for the City as a clerical worker in the City Clerk's Office. In September 1988, the City Council announced an opening in the position of City Clerk caused by the current City Clerk's impending retirement. Goldsmith applied for the City Clerk opening, but the City Council instead awarded the position to a white female.

Upon learning that the City had selected a white female to fill the City Clerk position, Goldsmith suspected that her application had not been properly considered because of race discrimination. Goldsmith advised City Councilman Curtis Harris that she planned to consult an attorney about the possibility of filing charges with the EEOC. The morning after Goldsmith's conversation with Councilman Harris, Harris called on Mayor Shell at his office in City Hall. Immediately after Harris departed, Mayor Shell called Goldsmith into his office to inform her that the City Clerk position had been filled and "there was nothing [Goldsmith] could do about it." From this statement, Goldsmith concluded that Harris had informed Mayor Shell of her plans to file an EEOC complaint and that Mayor Shell was attempting to discourage her from doing so.

On the afternoon of Friday, December 2, 1988, approximately three weeks after Harris met with Mayor Shell, Shell advised Goldsmith that he was transferring her to a clerical position at the City Library. Mayor Shell told Goldsmith to clean out her desk and turn in her keys by the end of the day because she would not be returning to City Hall. The following Monday, Goldsmith began working at the same salary in the City Library, where she has worked throughout the pendency of these proceedings.

### B. *Procedural History*

On December 22, 1988, Goldsmith filed an EEOC charge against the City, alleging that the City racially discriminated against her by failing to award her the City Clerk position, and that the City then retaliated against her by transferring her to the City Library when she revealed her intention to take legal action on the race discrimination claim. The EEOC issued Goldsmith a notice of her right

---

* Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

to institute a civil action on the charge, which Goldsmith received on June 25, 1990.

On August 20, 1990, Goldsmith, proceeding pro se, filed her EEOC right-to-sue notice, together with a memorandum containing a summary of her allegations against the City, in federal district court. Goldsmith's case was assigned to a federal magistrate judge who ordered Goldsmith to file a formal complaint by September 28, 1990.

Goldsmith retained counsel and filed an amended complaint against the City on September 28, 1990. In her complaint, Goldsmith again raised the race discrimination and retaliation claims contained in her EEOC charge. Goldsmith alleged that each of these actions violated her rights under 42 U.S.C.A. § 1981 and under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C.A. § 1981 (West 1981); 42 U.S.C.A. §§ 2000e–2(a), 2000e–3(a) (West 1981). The City was served with notice of this complaint on October 11, 1990.

On March 4, 1991, Goldsmith filed a motion to amend her complaint in order to add (1) Mayor Shell as a defendant on the section 1981 and Title VII claims, (2) a cause of action against the City and Mayor Shell under 42 U.S.C.A. § 1983, and (3) a demand for trial by jury. *See* FED.R.CIV.P. 15, 39(b). Over the City's objections, the district court granted Goldsmith's motion to amend her complaint.

The City and Mayor Shell subsequently filed separate motions for summary judgment on Goldsmith's claims. Before the district court ruled on the summary judgment motions, Goldsmith orally abandoned her claim of race discrimination at the parties' pretrial conference. As a result, the sole issue remaining on summary judgment was the allegedly retaliatory transfer of Goldsmith from the City Clerk's Office to the City Library. In her briefs opposing the motions for summary judgment, Goldsmith asserted that her complaint alleged only (1) section 1981 and Title VII claims against the City,

and (2) section 1981 and section 1983 claims against Mayor Shell.

On December 16, 1991, the district court granted summary judgment in favor of the City and Mayor Shell on Goldsmith's section 1981 claims, ruling that claims of retaliation were not cognizable under section 1981. However, the district court allowed Goldsmith to proceed to trial on her Title VII claim against the City and on her section 1983 claim against Mayor Shell.[1]

On November 21, 1991, the Civil Rights Act of 1991 ("the 1991 Act") became law. *See* Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991). On December 20, 1991, Goldsmith filed a motion for leave to amend her complaint pursuant to the 1991 Act (1) to claim compensatory and punitive damages on the Title VII claim against the City, and (2) to reassert the section 1981 claims against the City and Mayor Shell. *See id.* §§ 101, 102. On January 15, 1992, the district court ruled that the relevant provisions of the 1991 Act applied retroactively to Goldsmith's claims, and the court therefore granted Goldsmith's motion to amend her complaint. Goldsmith then filed her final amended complaint which contained (1) section 1981 and Title VII claims against the City, and (2) section 1981 and section 1983 claims against Mayor Shell.

The case proceeded to trial on January 27, 1992. At the conclusion of Goldsmith's presentation of evidence, the City and Mayor Shell moved for judgment as a matter of law. The district court granted judgment in favor of the City on Goldsmith's section 1981 claim. In addition, the district court appears to have deemed Goldsmith's section 1983 claim against Mayor Shell abandoned based on the representation by Goldsmith's attorney that Goldsmith could not establish any property interest in her job at the City Clerk's office.[2] In any event, the district court ruled that the "remaining claims"—"this Title 7 claim against the City and the 1981 claim against

---

1. Based on the parties' arguments on summary judgment and on the terms of the pretrial order, the district court construed the section 1983 claim as a claim to enforce Goldsmith's due process rights under the Fourteenth Amendment.

2. Goldsmith has not appealed the district court's disposition of her section 1981 claim against the City or her section 1983 claim against Mayor Shell.

the defendant, Shell"—would be sent to the jury.

At the conclusion of trial, the district court instructed the jury on Goldsmith's Title VII and section 1981 claims. The jury returned a verdict in favor of Goldsmith on both claims, awarding $15,000 in compensatory damages and assessing Mayor Shell $25,000 in punitive damages. The district court denied the defendants' motions for judgment notwithstanding the verdict, and also denied Goldsmith's request for reinstatement at City Hall.[3] After the district court entered final judgment in accordance with the jury verdict, the City and Mayor Shell filed this appeal.

## II. DISCUSSION

On appeal, the City and Mayor Shell challenge the district court's entry of judgment in favor of Goldsmith. Therefore, the only causes of action at issue in this appeal are those on which Goldsmith prevailed: (1) the section 1981 claim against Mayor Shell; and (2) the Title VII claim against the City. The City and Mayor Shell argue that the district court committed numerous errors in applying the law governing section 1981 and Title VII claims. We address only those issues necessary to dispose of this case on appeal.

### A. The District Court's Retroactive Application of the 1991 Act

The City and Mayor Shell contend that the district court committed reversible error when it allowed Goldsmith to amend her complaint to invoke the provisions of the 1991 Act. According to the City and Mayor Shell, the 1991 Act does not apply retroactively to cases already pending at the time of its enactment. The district court's decision to give the 1991 Act retroactive effect is a conclusion of law subject to this Court's de novo review. *See Federal Deposit Ins. Corp. v. 232, Inc.,* 920 F.2d 815, 818 n. 4 (11th Cir.1991); *Wright v. Director, Federal Emergency Management Agency,* 913 F.2d 1566, 1572–73 (11th Cir.1990).

In *Baynes v. AT & T Technologies, Inc.,* 976 F.2d 1370, 1372 (11th Cir.1992), this Court held that the provisions of the 1991 Act which (1) expand the causes of action under section 1981, (2) grant the right of trial by jury in Title VII cases, and (3) allow plaintiffs to recover compensatory and punitive damages for Title VII claims, do not apply retroactively to cases in which the district court rendered judgment before the 1991 Act became effective. More recently, this Court concluded that "the reasoning of *Baynes* ... compels the conclusion that the same provisions of the Act involved in *Baynes* are not retroactively applicable to cases .... which were pending but had not resulted in final judgment as of the effective date of the Act." *Curtis v. Metro Ambulance Service, Inc.,* 982 F.2d 472, 473–74 (11th Cir.1993). The provisions of the 1991 Act at issue in this case are identical to those at issue in *Baynes.* Therefore, we are bound by precedent to hold that the 1991 Act does not apply to Goldsmith's claims, and that the district court committed reversible error when it allowed Goldsmith to amend her complaint to plead the 1991 Act's protection.

Because the 1991 Act does not apply retroactively, Goldsmith's claims of retaliatory transfer under section 1981 and Title VII must be measured by the law as it stood prior to the enactment of the 1991 Act. We must determine, then, whether a retaliatory transfer such as the one alleged by Goldsmith is actionable under section 1981 or Title VII under the law in place before the 1991 Act came into effect.

The conduct which forms the basis of Goldsmith's retaliation claims occurred in December 1988. In June 1989, the Supreme Court held that section 1981 "covers conduct only at the initial formation of the contact and conduct which impairs the right to enforce contract obligations through legal process." *Patterson v. McLean Credit Union,* 491 U.S. 164, 179, 109 S.Ct. 2363, 2374, 105 L.Ed.2d 132 (1989). Therefore, the Court ruled that post-formation conduct, such as conduct affecting "the terms and conditions

---

**3.** The district court denied Goldsmith's request for reinstatement on the grounds that Goldsmith would be adequately compensated for her injuries by the compensatory and punitive damages awarded by the jury.

of continuing employment," was not actionable under section 1981. *Id.* This Court has subsequently held that *Patterson* applies retroactively, *see Vance v. Southern Bell Telephone & Telegraph Co.*, 983 F.2d 1573, 1576–77 (11th Cir.1993),[4] and that *Patterson* bars section 1981 actions based on lateral employment transfers, *see Vance*, 983 F.2d at 1576; *Jones v. Firestone Tire and Rubber Co., Inc.*, 977 F.2d 527, 537 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2932, 124 L.Ed.2d 682 (1993). Under this array of precedent, we conclude that Goldsmith's claim of retaliatory transfer is not actionable under section 1981. Therefore, Mayor Shell is entitled to judgment on Goldsmith's section 1981 claim.[5]

In contrast, retaliatory employment practices have always been actionable under Title VII. *See* 42 U.S.C.A. § 2000e–3(a) (West 1981); *EEOC v. White and Son Enterprises,* 881 F.2d 1006, 1012 & n. 5 (11th Cir.1989); *Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998, 1005–08 (5th Cir.1969). The only benefits Goldsmith claimed under the 1991 Act with respect to her Title VII claim were (1) the right to a jury trial and (2) the right to recover compensatory and punitive damages. *See* Civil Rights Act of 1991, Pub.L. No. 102–166, § 102, 105 Stat. 1071, 1072 (1991) (*codified at* 42 U.S.C.A. § 1981a (West Supp.1993)). Although our holding necessarily precludes Goldsmith from receiving either of these benefits, Goldsmith's claim of retaliation under Title VII remains viable under

pre-Act law unless the City can establish an alternative ground entitling it to judgment.[6]

### B. *The City's Right to Judgment as a Matter of Law on the Title VII Claim*

The City argues that the district court erred in denying it judgment as a matter of law on Goldsmith's Title VII claim. The City claims a right to judgment on the Title VII claim because (1) Goldsmith failed to file her action within 90 days of receiving notice from the EEOC of her right to sue, (2) Goldsmith failed to establish any retaliatory action for which the City is liable, and (3) Goldsmith's evidence was legally insufficient to establish a Title VII violation. We address each of these contentions in turn.

#### 1. *Goldsmith's Compliance with the 90 Day Rule*

The City argues that Goldsmith is barred from bringing her Title VII claim because she failed to comply with Title VII's requirement that plaintiffs seeking to bring civil actions under Title VII must do so within 90 days of receiving notice of their right to sue from the EEOC. *See* 42 U.S.C.A. § 2000e–5(f)(1). The parties agree that Goldsmith received her right-to-sue notice from the EEOC on June 25, 1990. The City insists, however, that Goldsmith's filings with the district court on August 20, 1990, did not satisfy the pleading requirements necessary to commence a civil action, and that Goldsmith did not file a valid complaint until

---

**4.** Goldsmith argues that there is no reason to apply *Patterson* retroactively in this case because (1) defendants acting prior to *Patterson* could not have relied on its holding, and (2) the 1991 Act amends section 1981 to restore pre-*Patterson* law. In *Vance*, this Court considered and rejected this same argument, and we are not at liberty to reconsider the issue in this case. *See Vance,* 983 F.2d at 1576–78; *id.* at 1578–80 (Fay, J., concurring in part and dissenting in part); *cf. Sherry Mfg. Co., Inc. v. Towel King of Fla., Inc.,* 822 F.2d 1031, 1034 n. 3 (11th Cir.1987) (decision by panel of the Eleventh Circuit Court of Appeals binds all subsequent panels absent reconsideration en banc or a contrary decision by the United States Supreme Court).

**5.** Mayor Shell also contends that the district court erred in (1) rejecting his statute of limitations defense, (2) refusing to address his claim of

qualified immunity, (3) granting Goldsmith's motion to make an untimely jury demand, (4) reinstating Goldsmith's section 1981 claim after summary judgment had been granted, and (5) giving the jury defective instructions on the section 1981 claim. In light of our conclusion that Goldsmith does not have a cognizable section 1981 claim against Mayor Shell, we find it unnecessary to address these alternative grounds for reversal.

**6.** Because we hold that Goldsmith was not entitled to a jury trial or to compensatory damages on her Title VII claim, we find it unnecessary to address the City's alternative arguments that (1) the district court abused its discretion in granting Goldsmith's untimely motion to make a jury demand, and (2) Goldsmith's evidence of damages was too speculative to support the jury's award.

September 28, 1990, four days after the statutory period had expired.

■ We agree that Goldsmith's filing on August 20, 1990, did not satisfy the pleading requirements necessary to commence a civil action. Under Rule 8(a), a complaint must contain "a short and plain statement" of (1) the court's jurisdiction, (2) the grounds for relief, and (3) the nature of the relief sought. *See* FED.R.CIV.P. 8(a). Goldsmith's filing on August 20, 1990, consisted of her right-to-sue letter and a signed memorandum in which she describes the factual basis for her claims. Taken together, these documents constitute a "short and plain statement" of the court's jurisdiction and the grounds for relief. *See Robinson v. City of Fairfield,* 750 F.2d 1507, 1511–12 & n. 5 (11th Cir.1985); *Judkins v. Beech Aircraft Corp.,* 745 F.2d 1330, 1332 (11th Cir.1984). However, Goldsmith's initial filing failed to satisfy Rule 8(a)(3)'s requirement that the complaint contain "a demand for judgment for the relief the pleader seeks." This requirement is not arduous— "any concise statement identifying the remedies and the parties against whom relief is sought will be sufficient." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1255 at 366 (2d ed. 1990). Nevertheless, after having carefully reviewed the documents initially filed by Goldsmith, and allowing her the "wide latitude" generally afforded pro se litigants in their pleadings, *see Securities and Exchange Comm'n v. Elliot,* 953 F.2d 1560, 1582 (11th Cir.1992), we have been unable to find a single reference to any requested relief which would satisfy the minimal requirements of Rule 8(a)(3).

■ Despite this deficiency in Goldsmith's first attempt at filing, we hold that Goldsmith's action was timely filed under the principles of equitable tolling. *See Suarez v. Little Havana Activities,* 721 F.2d 338, 340 (11th Cir.1983) (90 day rule is subject to equitable tolling); *Jackson v. Seaboard Coast Line Railroad Co.,* 678 F.2d 992, 1007 (11th Cir.1982) (90 day rule is not jurisdictional). Equitable tolling may be justified where the plaintiff actively pursued judicial remedies by filing a defective pleading within the statutory period, *see Irwin v. Veterans Admin.,* 498 U.S. 89, 96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990); *Scholar v. Pacific Bell,* 963 F.2d 264, 267–68 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992), or where the plaintiff has been misled by the court into believing that a filing was effective, *see Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984); *Hill v. John Chezik Imports,* 869 F.2d 1122, 1124 n. 2 (8th Cir.1989). Goldsmith's case falls within both these categories.

First, Goldsmith brought her case to the attention of the district court within the statutory period by filing her initial defective pleading with the district court on August 20, 1990. Second, Goldsmith was led by the district court to believe that her defective filing was effective for purposes of the 90 day rule. Goldsmith's EEOC notice informed her only that her complaint "must contain a short statement of the facts of your case which shows you are entitled to relief." Goldsmith, proceeding pro se, complied with this requirement by filing her memorandum and a copy of her EEOC right-to-sue. letter. The district court did not inform Goldsmith that her original filings were inadequate for Title VII purposes, but rather issued an order allowing Goldsmith to file, a complaint "fully setting out her claim in compliance with the Federal Rules of Civil Procedure by September 28, 1990." When Goldsmith complied with this order, the. district court treated the original filing as effective for purposes of the 90 day rule throughout the remainder of the proceedings. Under these circumstances,[7] we hold that the expiration of the 90 day limitations period was equitably tolled through September 28, 1990, by virtue of the district court's order, and that Goldsmith's filing on that date was timely.

### 2. The City's Liability for Goldsmith's Transfer

■ The City also argues that it was entitled to judgment as a matter of law on

---

7. The City does not claim any prejudice which would result from the application of equitable tolling in this case.

Goldsmith's Title VII claim because it cannot be held liable for the acts of Mayor Shell. We find this argument to be without merit. Under Title VII, an "employer" may be found liable for a Title VII violation upon a judicial finding "that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint." *See* 42 U.S.C.A. § 2000e-5(g). Title VII defines a potentially liable "employer" as any "person engaged in an industry affecting commerce . . . *and any agent of such a person.*" 42 U.S.C.A. § 2000e(b) (emphasis added).[8] Goldsmith predicates her Title VII claim against the City on the City's liability for the unlawful employment practices of Mayor Shell as its agent.[9]

Because Title VII does not define the term "agent," we turn to the common law principles of agency to determine whether Mayor Shell was acting as an "agent" of the City when he transferred Goldsmith such that the City may be held liable for his actions. *See Meritor Savings Bank v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1558 (11th Cir.1987). Under these principles, an agent is one who agrees to act on behalf of another, subject to the other's control. *See* RESTATEMENT (SECOND) OF AGENCY § 1 (1958). An employee is generally considered an agent of his or her employer. *See id.* at § 2. The City concedes that Mayor Shell acted as a City employee, and therefore as an agent of the City, in conducting his duties as mayor.[10]

Once an agency relationship has been established, general agency principles also govern the circumstances in which the principal will be held liable for the acts of its agents under Title VII. *See Vinson,* 477 U.S. at 72, 106 S.Ct. at 2408. At trial, Goldsmith proceeded on the theory that the City was directly liable for Mayor Shell's transfer decision either because (1) Mayor Shell was acting within the scope of his employment in making the transfer decision, or (2) Mayor Shell used his agency relationship with the City to assist him in his unlawful retaliation. We agree that the City would be directly liable for the retaliation under Title VII in either situation. *See Sparks,* 830 F.2d at 1558–59; RESTATEMENT (SECOND) OF AGENCY § 219 (1958).

At trial, Goldsmith elicited evidence that the City had delegated final authority to Mayor Shell to make employment decisions within the City Clerk's Office. The City offered no evidence of any limitations on Mayor Shell's authority in this regard. On this evidence, a reasonable factfinder could have found the City liable for Mayor Shell's transfer decision under either of Goldsmith's theories of direct liability. *See Vance v. Southern Bell Telephone and Telegraph Co.,* 863 F.2d 1503, 1512–15 (11th Cir.1989); *Sparks,* 830 F.2d at 1557–60. Therefore, the district court did not err in submitting the City's liability to the factfinder in this case.

### 3. *Sufficiency of the Evidence*

 Finally, the City argues that it was entitled to judgment as a matter of law because Goldsmith failed to establish legally sufficient evidence of a Title VII violation. The burden of proof in Title VII retaliation

8. In turn, Title VII describes a "person" as incorporating "governments" and "political subdivisions." *See* 42 U.S.C.A. § 2000e(a).

9. We therefore reject the City's suggestion that Goldsmith conceded the City's non-liability at trial. At trial, Goldsmith testified that, "The city did not retaliate against me; the Mayor did." This statement is entirely consistent with Goldsmith's theory of liability—namely, that the City was liable for Mayor Shell's actions as the actions of its agent.

10. The City suggests that Title VII's definition of "employee," *see* 42 U.S.C.A. § 2000e(f), governs the scope of agency liability under Title VII. Title VII defines "employee" to limit the class of workers entitled to protection against unlawful employment practices, specifically excluding "any person elected to public office" from Title VII protection. *See, e.g., Starrett v. Wadley,* 876 F.2d 808, 820–22 (10th Cir.1989); *Teneyuca v. Bexar County,* 767 F.2d 148, 150–53 (5th Cir. 1985). Because Title VII's definition of "employee" exempts elected officials from Title VII protection, the City argues that Mayor Shell should also be exempt from Title VII liability. We reject this argument. Title VII's definition of "employer" incorporates liability for the act of "*any* agent" subject only to separate limitations not at issue in this case. *See* 42 U.S.C.A. § 2000e(b) (emphasis added).

cases is governed by the framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to prevail, the plaintiff must first establish a prima facie case by showing (1) statutorily protected expression, (2) adverse employment action, and (3) a causal link between the protected expression and the adverse action. *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1524 (11th Cir.1991); *Jones v. Lumberjack Meats, Inc.,* 680 F.2d 98, 101 (11th Cir.1982). Once a prima facie case has been established, the defendant may come forward with legitimate reasons for the employment action to negate the inference of retaliation. *Weaver,* 922 F.2d at 1525–26; *Doyal v. Marsh,* 777 F.2d 1526, 1534 (11th Cir.1985). If the defendant offers legitimate reasons for the employment action, the plaintiff then bears the burden of proving by a preponderance of the evidence that the reasons offered by the defendant are pretextual. *See Donnellon v. Fruehauf Corp.,* 794 F.2d 598, 600 & n. 2 (11th Cir.1986); *Jones,* 680 F.2d at 101; *Whatley v. Metropolitan Atlanta Rapid Transit Auth.,* 632 F.2d 1325, 1328 (5th Cir.1980).

■ The City first challenges Goldsmith's prima facie case as insufficient to establish the "causal link" between her protected statement to Councilman Harris and her transfer to the City Library. The City argues that Goldsmith failed to establish causation because she did not prove that Mayor Shell even knew of her conversation with Councilman Harris at the time of her transfer.[11]

■ In order to establish the requisite "causal link" required as part of a prima facie case, a plaintiff need only establish that "the protected activity and the adverse action were not wholly unrelated." *See EEOC v. Reichhold Chemicals, Inc.,* 988 F.2d 1564, 1571–72 (11th Cir.1993); *Bigge v. Albertsons, Inc.,* 894 F.2d 1497, 1501 (11th Cir.1990);

*Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.), *cert. denied,* 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985). At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. *See, e.g., Weaver,* 922 F.2d at 1525; *Simmons,* 757 F.2d at 1189. The defendant's awareness of the protected statement, however, may be established by circumstantial evidence. *Cf. Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1183 (2d Cir.1992) (quoting *Visser v. Packer Engineering Assoc., Inc.,* 924 F.2d 655, 659 (7th Cir.1991) (*en banc*)) (noting that "all knowledge is inferential"), *cert. denied,* — U.S. —, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

■ We conclude that Goldsmith offered sufficient circumstantial evidence that Mayor Shell was aware of her conversation with Councilman Harris to satisfy the causal link requirement of her prima facie case. Goldsmith testified that at the time she informed Councilman Harris of her intention to look into the possibility of filing an EEOC complaint, Councilman Harris urged her not to do so and told Goldsmith he would go talk to Mayor Shell about the Mayor's handling of announcements concerning the City Clerk position. The next morning, Councilman Harris did in fact visit Mayor Shell in his office at City Hall. Goldsmith testified that immediately after Councilman Harris departed, Mayor Shell called her into his office to inform her that the City Clerk position had been filled and there was nothing she could do about it. Goldsmith replied that she would see if there was anything she could do about it when she talked to her lawyer. Three weeks later, Mayor Shell abruptly transferred Goldsmith to the City Library. This evidence was sufficient to satisfy Goldsmith's initial burden to show a "causal link" between her statements and her transfer.[12]

---

11. The City also asserts that Goldsmith's statements were not protected expression under Title VII because they were made in the course of a "private conversation." This argument was not raised before the district court, and we find it to be without merit. *See Rollins v. State of Fla. Dep't of Law Enforcement,* 868 F.2d 397, 400

(11th Cir.1989) (informal complaints of discrimination are protected expression under Title VII).

12. Although Mayor Shell and Councilman Harris both denied any mention of Goldsmith during their meeting, Mayor Shell was impeached by his prior deposition testimony in which he stated that he may have spoken with Councilman Har-

See *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.1987) (evidence that employer knew of employee's protected activities, combined with a proximity in time between protected action and the allegedly retaliatory action, is sufficient to establish prima facie case of retaliation); *Donnellon,* 794 F.2d at 600–01 (fact that plaintiff was discharged only one month after filing complaint with the EEOC "belies any assertion by the defendant that the plaintiff failed to prove causation").

■■■ The City also argues that Goldsmith failed to establish that the legitimate reasons it offered for transferring Goldsmith were pretextual. The legitimate reasons offered by the City at trial for Goldsmith's transfer included various deficiencies in Goldsmith's performance at City Hall, and Mayor Shell's suspicion that Goldsmith had been regularly rummaging through his desk. Goldsmith sought to establish these purported justifications as pretextual through evidence that (1) Goldsmith had never been informed of any deficiencies in her job performance in all her time at City Hall, (2) Goldsmith's superiors at the City Library were completely satisfied with her job performance there, (3) Goldsmith had only been through Mayor Shell's desk once under justifiable circumstances, and Mayor Shell did not mention this as a basis for the transfer until after the EEOC investigation began, and (4) Mayor Shell had originally cited economic reasons for the transfer but retreated from this position in the face of evidence that the transfer actually increased City expenditures. This evidence was sufficient to create a genuine issue of material fact as to pretext. *See Sparks,* 830 F.2d at 1564 (the implausibility of asserted justifications creates a genuine issue of material fact sufficient to preclude judgment as a matter of law). Thus, the district court did not err in denying the City's motion for judgment as a matter of law.

### III. CONCLUSION

For the foregoing reasons, the district court's entry of judgment is REVERSED and the case is REMANDED for further proceedings on the Title VII claim, and with instructions to enter judgment in favor of Mayor Shell on the section 1981 claim.

---

ris about Goldsmith's complaints prior to her transfer. We find no error in the district court's decision to submit this disputed evidence to the trier of fact.