[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 19, 2011
JOHN LEY
CLERK

No. 08-14913
Non-Argument Calendar
_____

D. C. Docket No. 07-00273-CV-W-N

MILISSA JONES,

Plaintiff-Appellant,

versus

FLYING J, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(January 19, 2011)

Before EDMONDSON, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff Milissa Jones appeals the district court's entry of judgment as a

matter of law in favor of Defendant Flying J, Inc. ("Flying J") on Jones's Title VII

retaliation claim. After review, we affirm.

## I. BACKGROUND

### A. Procedural History

Plaintiff Jones worked for Flying J as a convenience store manager from

December 8, 2005 until April 21, 2006, when she was terminated for excessive

absenteeism. Jones sued Flying J under Title VII, 42 U.S.C. § 2000e et seq.,

alleging (1) she was sexually harassed and subjected to a hostile work environment

by Butch Jacobs, her immediate supervisor, and (2) she was terminated by Keith

Staples in retaliation for her complaining about Jacobs's sexual harassment.

The district court granted summary judgment to Flying J on Jones's sexual

harassment claim on Faragher/Ellerth grounds.[1] Jones has not opposed summary

judgment on this claim either in the district court or on appeal.

The case proceeded to a jury trial on Jones's retaliation claim. At the close

of Jones's case, Flying J moved, pursuant to Federal Rule of Civil Procedure 50,

for judgment as a matter of law.[2] The district court reserved ruling on the motion

---

[1]Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998).

[2]Rule 50 provides, in pertinent part:
If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

2

and permitted Flying J to present its case.  At the close of all evidence, the district court granted Flying J's Rule 50 motion.  The district court concluded, <u>inter alia</u>, that there was no evidence that Staples knew about Jones's complaint against Jacobs when Staples terminated her.  Jones appealed.[3]

To resolve Jones's appeal, we first review the evidence presented at trial.[4]

## B.    Trial Evidence

Flying J operates a number of "travel plazas," facilities that combine a convenience store, restaurant, and gas station.  On December 8, 2005, Butch Jacobs, the general manager of one travel plaza, hired plaintiff Jones as a convenience store manager.  Jacobs was Jones's immediate supervisor.  Jacobs's supervisor was district manager Kerry Lake.

---

        (A) resolve the issue against the party; and
        (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1).

[3]We review <u>de novo</u> a district court's decision to grant a Rule 50(a) motion for judgment as a matter of law.  <u>Webb-Edwards v. Orange Cnty. Sheriff's Office</u>, 525 F.3d 1013, 1029 (11th Cir. 2008).  "In doing so, we consider all the evidence in the light most favorable to the non-moving party, and independently determine whether the facts and inferences point so overwhelmingly in favor of the movant . . . that reasonable people could not arrive at a contrary verdict."  <u>Id.</u> (omission in original).

[4]As Appellant, it is Jones's duty to cite portions of the record in support of her contentions.  Fed. R. App. P. 28(a)(9)(A); <u>Nat'l Alliance for the Mentally Ill, St. Johns, Inc. v. Bd. of Cnty. Comm'rs</u>, 376 F.3d 1292, 1295-96 (11th Cir. 2004).  We therefore rely on the portions of the record cited in Jones's brief.

Jacobs sexually harassed Jones. On March 30, 2006, Jones's attorney sent a letter to Flying J's corporate counsel, Kelly Lowrey, reporting Jacobs's sexual harassment of Jones.[5]

After an investigation, Flying J, on April 10, 2006, fired Jacobs and named Keith Staples, who was Flying J's district accounting manager, to serve as interim general manager of the travel plaza.

On Friday, April 21, 2006, interim general manager Staples fired Jones, citing her excessive absences. Jones was absent five days right before her firing. Specifically, Jones was scheduled to work on Friday, April 14, 2006, but did not. Jones called in and spoke to Lake. Lake told Jones that they needed her at work, but Jones told him she was in pain and would be out until at least the following Tuesday. Jones was not scheduled to work on Saturday, Sunday, or Monday.

On Monday, April 17, 2006, Jones learned she was pregnant. Jones was bleeding, and the doctor advised her to stay off her feet. Jones told no one at work that she was pregnant, but told them she was under a doctor's care and that the doctor wanted her off her feet. On Monday night, Jones told Lake that she "didn't

---

[5]Jones's attorney's letter also reported a one-time incident of managers going to a strip club in October 2005, which was before Jones was hired at Flying J.

On Thursday, April 20, 2006, Jones's attorney sent a letter to Flying J's corporate counsel Lowrey, reporting that Jones's fellow managers at the travel plaza were hostile to Jones and refused to give her information she needed to do her work. In this letter, Jones offered to resign in exchange for six months' salary.

really want to go into what was going on, but it was a major issue and [she] was waiting on some test results and a couple other things before [she] could return to work." At Lake's request, Jones called Staples and told him "it was a medical issue, that [she] could provide documentation, and that [she] would definitely be out that week, that [she] would keep them apprised of the situation, and that [she] was hoping to be back the next week but [she] wasn't sure, to go ahead and prepare that [Jones] wouldn't be there."

Jones did not work on Tuesday, April 18, 2006. Jones called Staples and told him she was waiting on test results from her doctor. Staples "asked numerous times [for Jones] to come in" to work.

Jones did not work on Wednesday, April 19, 2006. Staples called Jones. Jones told Staples she could not come in, that her situation had not changed and that she was "hoping to be back the next week."

Jones did not work on Thursday, April 20, 2006. She did not call in because nothing had changed. She did not provide Flying J with a doctor's note about her five missed days of work. On Friday, April 21, 2006, Staples called Jones and told her "that due to [Jones's] excessive absences, [she] was being terminated."

Jones acknowledged she had received an employee manual and knew Flying J had a written policy for being paid sick leave by filling out an application. Jones

"wasn't really concerned with it, because [she] wasn't planning on being out that long." Jones was aware Flying J allowed employees to take maternity leave and leave for issues relating to pregnancy, but she did not want anyone to know about her pregnancy at that time.

Keith Staples, the interim general manager who fired plaintiff Jones, denied knowing Jones had complained about sexual harassment. Staples knew Butch Jacobs was fired. Staples filled out Jacobs's termination form, which stated Jacobs was terminated for "[m]isrepresentation during investigation." Staples had no information about the Jacobs investigation and did not participate in the investigation.[6]

Staples testified he did not learn Jones had a medical condition until after he fired Jones. Between April 14 and April 21, 2006, Staples "was calling [Jones,] asking what was going on, and [Staples] wasn't getting any information." Their conversations were "pretty adversarial." Staples told Jones that he "was trying to run a business" and "needed to know what was going on and when she was coming back to work."

On April 20, 2006 Staples called Flying J's Human Resources director Jerry Beckman and told Beckman that Jones was not reporting to work, that Staples was

[6]Staples did not know anyone complained about the strip club incident until after he fired Jones. See footnote 5, supra.

concerned, and that Staples needed Beckman's advice. The next day, Jones did not report to work and Staples had not heard from her. Staples fired Jones and called her at home to tell her.

Jones's counsel showed Staples his deposition, in which Staples stated he consulted with the human resources director Beckman and with corporate counsel Lowrey in deciding to fire Jones. Staples clarified that he meant that he called Beckman and assumed that Beckman would talk with Lowrey or the legal department. In his deposition too, Staples denied knowing about Jones's sexual harassment allegations.

Corporate counsel Lowrey testified that when she received the March 30, 2006 letter from Jones's attorney, Lowrey sent the letter to Chris Bone, a manager in the company's human resources department, so that Bone could investigate Jones's allegations. After an investigation, Lowrey wrote Jones's attorney that Jacobs was terminated and that Jones should notify Flying J's corporate human resources department immediately if Jones had any other problems at work.

Lowrey never contacted Staples or anyone else at the travel plaza about Jones's sexual harassment allegation because the investigation was human resources' responsibility. Lowrey did not talk to Staples or consult with him in any way before he fired plaintiff Jones.

7

Chris Bone, the human resources manager, testified that, after investigation, he concluded Jacobs should be fired and instructed Lake to do so. Bone never discussed the investigation with either Staples or Jones.

## II. DISCUSSION

To make out a prima facie case of retaliation under Title VII, a plaintiff "must show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010); accord Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007). There is no dispute that Jones has established the first two elements – her sexual harassment complaints were statutorily protected activity, and her firing was a materially adverse employment action. The only issue is whether Jones produced evidence from which a reasonable jury could find a causal connection existed between her sexual harassment complaints and her firing.[7]

To establish the causal connection element of the prima facie case, a plaintiff

---

[7]Once a plaintiff establishes a prima facie case, the defendant employer "must proffer a legitimate, non-retaliatory reason for the adverse employment action." Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). "The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct." Id. Here, though, we are concerned only with whether Jones established a prima facie case sufficiently to withstand Flying J's Rule 50(a) motion.

must show only "that the protected activity and the adverse action were not wholly unrelated." Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993) (quotation marks omitted). To do so, "the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." Brungart v. BellSouth Telecomm., Inc., 231 F.3d 791, 799 (11th Cir. 2000). The decision maker's awareness can be established by circumstantial evidence. Id.

Although close temporal proximity between the protected activity and the adverse employment action is ordinarily enough circumstantial evidence to permit a jury to find the causal connection element met, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." Id. (citing Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1355-56 (11th Cir. 1999). The plaintiff must present more than "mere curious timing coupled with speculative theories." Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997).

Here, Jones was fired 22 days after her first sexual harassment complaint and only 1 day after her second. Thus, she has shown close temporal proximity between her protected activity and the adverse employment action. See, e.g.,

9

Donnellon v. Fruehauf Corp., 794 F.2d 598, 601 (11th Cir. 1986). But the decision maker, interim general manager Staples, repeatedly denied knowing at the time he fired Jones that Jones had complained of sexual harassment. Further, the other Flying J employees who did know about Jones's sexual harassment claims – corporate counsel Lowrey, who received the complaints, and human resources manager Bone, who investigated them – denied telling Staples about them. Staples's denials stand unrebutted.

Jones points to Staples's deposition testimony that (1) Staples decided to fire Jones "in consultation with" both Beckman (human resources) and Lowrey, and (2) Staples discussed "the situation with Milissa [Jones]" with Lowrey, Lake, and Beckman before Staples fired Jones. Given the context, there is no reasonable basis for inferring that this comment referred to Jones's sexual harassment complaints rather than her absences from work. In fact, Staples's follow-up statement "I mean I may have told them what I was doing" strongly suggests that Staples's comment refers to Jones's absences and Staples's response to them. Moreover, human resources director Beckman testified that he and Staples spoke the day before Staples fired Jones, and they discussed Jones's failure to report to work.[8]

---

[8]Jones's reliance on Goldsmith, 996 F.2d 1155, is misplaced. In Goldsmith, the city mayor who decided on the adverse employment action (plaintiff's transfer) and the city

10

Finally, we recognize Staples filled out Jacobs's termination form – which stated Jacobs was terminated for "[m]isrepresentation during investigation." While this shows Staples was aware of the fact of an investigation, it does not raise a reasonable inference that Staples knew that the investigation involved sexual harassment by Jacobs or that Jones had prompted the investigation. See Clover, 176 F.3d at 1354-55 (concluding plaintiff's evidence that manager who fired plaintiff knew his friend and subordinate was being investigated by the company was insufficient for reasonable jury to find manager was aware that plaintiff participated in the investigation). And the fact that Staples spoke regularly with Lake, who was aware of the details of the investigation at the travel plaza, is not sufficient either. See id. at 1355 (stating that the "fact that the vice-president who heads a corporate division and the vice-president in charge of Human Resources talk regularly is not surprising, nor is it enough to support a reasonable inference that they discussed a specific topic, much less an inference concerning what they

---

councilman to whom plaintiff had brought her complaint of sexual discrimination admittedly met in the time frame between plaintiff's complaint and her transfer but denied talking about the plaintiff. 996 F.2d at 1163 & n.12. However, plaintiff impeached the mayor with prior deposition testimony in which the mayor admitted he may have spoken with the councilman about the plaintiff's complaints. Id. at 1163 n.12. This Court found no error in the district court's decision to submit the disputed evidence to the jury. Id.

Jones's case is more like Clover, 176 F.3d 1346, in which this Court concluded that evidence that the decision maker spoke with someone who knew of the plaintiff's protected activity did not raise an inference of awareness on the decision maker's part because evidence showing that the decision maker could have been told about plaintiff's protected activity is not the same as evidence showing that he was told. Clover, 176 F.3d at 1355.

11

said about it," for "'could have told' is not the same as 'did tell'").

In conclusion, Jones did not establish the causation element of the prima facie case as to her retaliation claim, and the district court did not err in granting judgment as a matter of law to Flying J.

**AFFIRMED.**