[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17024
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-02650-WSD


SILAH WILLIAMS,

Plaintiff - Appellant,

versus

GALLUP, INC.,

Defendant - Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(September 20, 2017)

Before TJOFLAT, MARCUS and JORDAN, Circuit Judges.

PER CURIAM:

Silah Williams sued his former employer, Gallup, Inc., for alleged race and gender discrimination, and retaliation, in violation of Title VII. He now appeals,

*pro se*, the district court's grant of summary judgment in favor of Gallup and the district court's orders allowing his former attorneys to withdraw, denying his request for replacement counsel, and denying his request for case-related documentation allegedly in his former attorneys' possession. After a review of the parties' briefs and the record, we affirm.

## I

Because we write for the parties, we assume their familiarity with the underlying record and recite only what is necessary to resolve this appeal.

Mr. Williams began working at Gallup as a Client Service Manager (CSM) in Gallup's Atlanta, Georgia office in July of 2011. During his tenure there, his direct supervisor was Michele Kern. She reported to Patrick Bogart, the Director of Consulting for Gallup, who was generally responsible for staffing decisions, including whether to hire or fire Mr. Williams. Throughout his time at Gallup, Mr. Williams sought out projects and growth opportunities. On several occasions, however, Mr. Williams was not selected to be a member of or lead a project. Over time, Mr. Williams began to feel like he was being overlooked because he was African American and male, and he observed that white men and women were being selected over him for his desired projects. So, Mr. Williams reached out to his supervisors to inquire about why he was being "treated differently" and not getting certain opportunities. *See, e.g.,* D.E. 37 at 52, 64, 202. Eventually,

2

Mr. Williams' client hours, which he had to maintain a minimum number of, began to suffer.

Ultimately, Gallup terminated Mr. Williams in March of 2014, citing his low performance ratings and low billable client hours during a period of declining revenue for Gallup. Shortly thereafter, Mr. Williams filed suit against Gallup, claiming that he was discriminated against and eventually terminated because of his race and gender, and that his employers retaliated against him because he questioned their decision-making with regards to work projects.

After discovery was completed, Gallup moved for summary judgment. A magistrate judge drafted a thorough report and recommendation concluding that Gallup was entitled to summary judgment. Neither party objected to the magistrate judge's report and recommendation. The district court adopted the magistrate judge's conclusions and granted summary judgment to Gallup.[1]

Around the same time, Mr. Williams was battling his attorneys in parallel motion practice. After Gallup filed its motion for summary judgment,

---

[1] Gallup raised the issue of timeliness in its motion for summary judgment, arguing that Mr. Williams' claims of being "passed over" for assignments on several occasions happened 180-days before he filed his charge with the Equal Employment Opportunity Commission, resulting in a time bar. *See* D.E. 35-1 at 22–23. The magistrate judge concluded that all but one instance fell outside the relevant period, but rejected that example and determined that only the termination claim remained. The district court found no plain error in this finding. Mr. Williams does not contest the district court's decision as to this issue, so we do not address it. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

Mr. Williams' two attorneys filed a motion to withdraw on the ground that Mr. Williams was "verbally abusive" to one of them. D.E. 45 at 2. The magistrate judge granted their motion. Then, Mr. Williams filed a motion to have counsel appointed on his behalf, which the magistrate judge denied. At around the same time, Mr. Williams sought an extension of time to respond to Gallup's motion for summary judgment, claiming that his former attorneys were withholding from him information related to his case. He asked the magistrate judge to force his former attorneys to turn over his file and sanction them. The district court granted Mr. Williams an extension but denied his other request because it accepted as true the attorneys' assertions that they produced the relevant file to him with the exception of their attorney work-product.

Mr. Williams now appeals.

## II

Because Mr. Williams is proceeding *pro se* on appeal, we hold his briefs to a less stringent standard and liberally construe his arguments. *See Campbell v. Air Jamaica, Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). We cannot, however, serve as *de facto* counsel for him. *Id*. at 1168–69.

We generally review a district court's grant of summary judgment *de novo* and apply the same standard as the district court. *See Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997). "Summary judgment is

appropriate if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.*

Mr. Williams' failure to object to the magistrate judge's report and recommendation, however, affects our analysis on appeal. A litigant's failure to object to a magistrate judge's report and recommendation would generally result in a waiver of the right to challenge the district court's order. *See* 11th Cir. R. 3-1. *See also Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1257 (11th Cir. 2017) (refusing to address an issue the plaintiff failed to raise in his objection to a magistrate judge's report and recommendation). We can, however, review for plain error "if necessary in the interests of justice." 11th Cir. R. 3-1. Because Mr. Williams was then-recently proceeding *pro se* when the magistrate judge's report and recommendation issued, we will review his appeal for plain error. "For there to be plain error, there must (1) be error, (2) that is plain, (3) that affects the substantial rights of the party, and (4) that seriously affects the fairness, integrity, or public reputation of a judicial proceeding." *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1179 (11th Cir. 2002).

### III

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of [his] race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1). Where, as here, there is no direct evidence of discrimination, we apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).

The *McDonnell Douglas* framework initially puts the burden on the plaintiff to establish a prima facie case of discrimination. *See id.* This requires the plaintiff to establish that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) his employer treated similarly-situated employees outside of his protected class more favorably; and (4) he was qualified for the job. *See id.* If the plaintiff can establish these elements, the burden then shifts to the employer, who must produce a legitimate, non-discriminatory reason for the alleged disparate treatment. *See id.* If the employer can do so, then the plaintiff must show that the employer's proffered reasons are merely pretextual. *See id.*

The district court adopted the magistrate judge's two independent bases for rejecting Mr. Williams' discrimination claims related to his termination. First, it held that Mr. Williams failed to establish a prima facie case of discrimination because the only similarly-situated comparator presented, Shay Hope, a white male who worked as a CSM in the Atlanta office, was ultimately terminated a week after Mr. Williams for similar reasons. Second, the district court held that Mr. Williams

failed to show pretext in response to Gallup's proffered reasons for his termination. In fact, it stated that Mr. Williams "did not even argue pretext." D.E. 62 at 24.

We agree with the district court that Mr. Williams failed to establish a prima facie case of discrimination against Gallup because he did not present a similarly-situated comparator that Gallup did not discharge for the same conduct. To determine whether employees are similarly situated, we evaluate "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Burke-Fowler*, 447 F.3d at 1323 (internal quotation marks omitted). In this case, Mr. Williams had to present at least one other CSM who was not in one of his protected categories who had poor ratings and low billable hours during the relevant period who was *not* discharged.

On appeal, Mr. Williams attempts to present three comparators to bolster his discrimination claims: Scott McGinnis for his race-based claim, and Monica Geddis and Amanda Saurin for his gender-based claim. None of these individuals were advanced by Mr. Williams below or addressed as such by the district court, so we cannot evaluate these individuals as comparators now. *See Access Now, Inc.*, 385 F.3d at 1331 ("This Court has repeatedly held that an issue not raised in

the district court and raised for the first time in an appeal will not be considered by this court.") (internal quotation marks omitted).[2]

Mr. Williams also claims that all CSMs in the East Region of Gallup during his tenure would be similarly-situated comparators.  This argument as well is raised for the first time on appeal, so we likewise do not address it.  *See id.*

Even if we assume that Mr. Williams could present a prima facie case, he cannot establish pretext.  Instead, he merely argues that a lack of client hours is a pretextual reason for terminating him.  Because Mr. Williams did not argue pretext below, we cannot address his pretext argument on appeal.  *See id.*  And even if we assume that Mr. Williams did argue pretext below, his bare allegations on the issue would be insufficient.  *See Nix v. WLCY Radio/Rahall Commc'ns,* 738 F.2d 1181, 1187 (11th Cir. 1984) ("Because Nix did not make out a prima facie case, he cannot prevail merely by showing that the articulated reason for his termination was probably not the true reason.").

Consequently, we conclude that the district court did not commit error, much less plain error, in granting Gallup summary judgment on Mr. Williams' discrimination claim.

---

[2] The district court references Mr. McGinnis, Ms. Geddis, and Ms. Saurin in the fact section of its order and states that these individuals were hired after Mr. Williams was terminated.  The district court does not, however, evaluate them as similarly-situated comparators.  The same is true for the magistrate judge's report and recommendation, except that the magistrate judge stated that these individuals were "retained" when Mr. Williams was terminated.  *See* D.E. 60 at 26–27.

## IV

Title VII similarly prohibits an employer from retaliating against an employee for "oppos[ing] any practice made [ ] unlawful" under the statute. 42 U.S.C. § 2000e-3(a). The *McDonnell Douglas* framework similarly applies because Mr. Williams' claim is based on circumstantial evidence. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162–63 (11th Cir. 1993). To establish retaliation, Mr. Williams had to show that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *See id.* at 1163. Mr. Williams argued in the district court that he communicated to his supervisors that he was being "treated differently" and that as a result, he was retaliated against in multiple ways, including being informed by Ms. Kern that he needed to attain a certain number of billable hours before a particular date to avoid termination, and eventually being terminated.

The district court agreed with the magistrate judge's conclusions that Mr. Williams failed to establish that he engaged in a statutorily protected activity and that there was a causal link between the alleged protected activity and the adverse action. According to the district court, Mr. Williams' alleged complaints about being "treated differently" were insufficient to establish that he engaged in statutorily protected activity, and even if he could demonstrate he engaged in

statutorily protected activity, there was no evidence that Mr. Bogart—the person who was ultimately responsible for terminating Mr. Williams—knew about his complaints about alleged discrimination.

On appeal, Mr. Williams asserts that he communicated that he was being treated differently to both Ms. Kern and Mr. Bogart and that the mandate that he obtain additional billable hours by a certain date was retaliation for doing so. Although he relies on an email communication from September of 2013 regarding his interest in understanding why he was not being selected for certain projects, and general assertions that Ms. Kern and Mr. Bogart were aware of his opposition to their "employment practices," *see* Appellant's Br. at 20, Mr. Williams does not point to any evidence that he specifically explained to Ms. Kern or Mr. Bogart that he felt that he was being discriminated against because of his race or gender.[3]

We recognize that the protection afforded by Title VII is not limited to individuals who file formal complaints and that its protection extends to informal complaints as well. *See Rollins v. State of Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989). Nonetheless, Mr. Williams did not present evidence to establish that he communicated to either Ms. Kern or Mr. Bogart that he thought he was being discriminated against because of his race or gender. Instead, he

---

[3] We note that neither the magistrate judge's report and recommendation nor the district court's order discussed this event. Gallup does not contest that this message was conveyed to Mr. Williams, although it does contest Mr. Williams' construal of the message as an "ultimatum" and evidence of discrimination. Because we do not need to assess the veracity of this fact to affirm the district court's order, we do not address this point.

communicated to Ms. Kern on several occasions that he was being treated "differently" without explaining that he meant he was being discriminated against. Although he argues that Ms. Kern and Mr. Bogart were aware of his concerns, his general assertions are insufficient to establish the first element of a prima facie case for retaliation. *See Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) (holding that written grievance was not statutorily protected activity because plaintiff offered no proof of discrimination to support her conclusory allegations). Consequently, we need not evaluate the other elements of Mr. Williams' retaliation claim and conclude that the district court did not plainly err in granting summary judgment to Gallup with regards to Mr. Williams' retaliation claim.

## V

We do not address Mr. Williams' arguments related to the magistrate judge's orders as they concern his former attorneys' request to withdraw, his request for the appointment of counsel, and his request for his client file. Mr. Williams did not object to the magistrate judge's nondispositive orders, so he waived his right to challenge them on appeal. *See Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1365 (11th Cir. 2007) ("We have concluded that, where a party fails to timely challenge a magistrate's nondispositive order before the

11

district court, the party waived his right to appeal those orders in this Court."). *See also* Fed. R. Civ. P. 72(a).[4]

## VI

The record demonstrates that the district court did not err in granting Gallup's summary judgment motion, let alone commit plain error. Mr. Williams failed to establish a prima facie case for either discrimination or retaliation, so we affirm the district court's summary judgment order. As for Mr. Williams' other arguments on appeal, we conclude that Mr. Williams waived his right to appeal the magistrate judge's nondispositive orders. As a result, we affirm.

**AFFIRMED.**

---

[4] In his reply brief, Mr. Williams claims that he *did* object to his attorneys' withdrawal, citing to a notice he filed in which he "state[d] [his] objection" to his attorneys' anticipated withdrawal, *see* D.E. 43 at 2, and his motion to appoint counsel, in which he stated that the withdrawal "occurred under [his] objection." D.E. 47 at 1. These are not formal objections to the magistrate judge's order regarding his attorneys' withdrawal, and although Mr. Williams was proceeding *pro se* at the time, Federal Rule of Civil Procedure 72(a) states that a litigant's failure to object to a magistrate judge's nondispositive order results in the waiver of the relevant issue(s) on appeal. *See Albra v. Alvan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (recognizing that *pro se* litigants must conform to procedural rules). Unlike Eleventh Circuit Rule 3-1, which gives us discretion to review a district court's decision for plain error in the absence of a litigant's failure to object to a magistrate judge's report and recommendation, Federal Rule of Civil Procedure 72(a) does not present such a possibility.

12