[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12711

_____

D.C. Docket No. 1:08-cv-01783-JOF

LICHELLE SMITH,

Plaintiff-Appellant,

versus

METROPOLITAN SECURITY SERVICES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 18, 2013)

Before COX and PRYOR, Circuit Judges, and WALTER*, District Judge.

---

*Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

PER CURIAM:

This appeal presents issues involving a Title VII retaliation claim and a Georgia state law battery claim.  We affirm.

## I.  BACKGROUND & PROCEDURAL HISTORY

Beginning on May 1, 2006, Metropolitan Security Services, Inc. employed Lichelle Smith as a receptionist and security guard at the SunGuard Building in Smyrna, Georgia.  Smith had continuously worked as a receptionist and security guard in the SunGuard Building since 1999, but worked for a variety of security contractors throughout that time, the last of which was Metropolitan.

As part of the transition from the previous security contractor, Metropolitan hired Smith and her supervisor, Felix Holliday, to remain in their positions at the SunGuard Building as employees of Metropolitan.  On July 5, 2006, Dan Millhouse, Metropolitan's general manager, arrived at the SunGuard Building; fired Smith's supervisor, Holliday; and installed Michael Garrett as Smith's new supervisor.

At trial, Smith testified that later that day, Donald Porter, who was also an employee of Metropolitan, approached and hugged her in the break room because they were both ostensibly upset by Holliday's termination.  Smith testified that while Porter was hugging her, he grabbed her butt, squeezed it, and then proceeded

2

to grab her breasts and pinch her nipples as she was pushing him away.  At trial, Porter denied all of these claims.

Smith testified that she immediately told her new supervisor, Michael Garrett, about the incident with Porter, and that he promised he would "take care of it."  (Dkt. 95 at 103.)  However, Garrett testified that Smith never reported the incident with Porter.

Smith testified that two days after the incident with Porter and the conversation with Garrett, Garrett called her into his office at the end of her shift and informed her she had been fired.[1]  Garrett also contests this version of events, and instead contends that he simply told Smith she was being reassigned and to report to Metropolitan Human Resources at the beginning of her next shift to receive her new assignment.  Garrett testified that he learned about Smith's pending reassignment from Metropolitan's general manager, Dan Millhouse, on the morning of his first day at the SunGuard Building, which was also the morning of the alleged attack. Garrett further testified that he did not have the authority to fire Smith, and that hiring and firing decisions were made by others above him at Metropolitan.

---

[1] Smith testified only that Garrett informed her that she had been fired-not that he made the decision to fire her. (Dkt. 95 at 103-04.)

3

Following these events, Smith filed a lawsuit against Metropolitan alleging five claims: (1) a Title VII retaliation claim; (2) a Title VII sexual harassment claim; (3) a Georgia state law battery claim; (4) a Georgia state law intentional infliction of emotional distress claim; and (5) a Georgia state law negligent hiring claim.

Before giving the case to the jury, the district court granted Metropolitan's Rule 50(a) motion to dismiss Smith's Title VII sexual harassment claim and her Georgia state law intentional infliction of emotional distress claim. The jury then returned a verdict in Smith's favor on the Title VII retaliation claim (awarding $30,000 in lost wages and $16,000 in punitive damages), the Georgia state law battery claim (awarding $10,000 in punitive damages), and the Georgia state law negligent hiring claim (awarding $5,000 in nominal damages and $20,000 in punitive damages).[2] For the Georgia state law battery claim, the jury did not award Smith compensatory damages, but awarded only punitive damages.

After the jury's verdict, the district court granted Metropolitan's Rule 50(b) renewed motion for judgment as a matter of law on both Smith's Title VII retaliation claim and her Georgia state law battery claim. On her Title VII

---

[2] Smith's Georgia state law negligent hiring verdict and judgment are not at issue in this appeal.

4

retaliation claim, the district court held that the record contained insufficient evidence to show a causal connection between Smith's report to Garrett about having been sexually harassed and her termination.  On her Georgia state law battery claim, the district court held that the verdict was "inconsistent" because Georgia law bars an award of punitive damages without an accompanying award of nominal or actual damages.  The only two claims at issue in this appeal are the Title VII retaliation claim and the Georgia state law battery claim.

## II.  ISSUES ON APPEAL

Smith contends that the district court erred by granting Metropolitan's Rule 50(b) motion on these two claims.  Specifically, Smith presents three issues on appeal.  First, she contends that the district court erred in granting Metropolitan's Rule 50(b) motion on her Title VII retaliation claim by wrongly applying the standard for granting judgment as a matter of law under Rule 50(b).  Second, she contends that the district court wrongly granted Metropolitan's Rule 50(b) motion reversing the jury's punitive damage award on her Georgia state law battery claim because Metropolitan waived its right to challenge the inconsistent damages verdict.  Finally, she argues that the district court wrongly granted Metropolitan's Rule 50(b) motion reversing the jury's punitive damage award on her Georgia state law battery claim because the court's jury instructions constituted plain error.  We address each of these issues in turn.

5

### III.  STANDARDS OF REVIEW

We review de novo the district court's grant of Metropolitan's Rule 50(b) motion for judgment as a matter of law, drawing all inferences in the light most favorable to Smith, the nonmoving party.  *Rossbach v. City of Miami*, 371 F.3d 1354, 1356 (11th Cir. 2004).

### IV.  DISCUSSION

### A.  TITLE VII RETALIATION CLAIM

In order to meet the initial burden of proof for a Title VII retaliation claim, a plaintiff must establish (1) that she engaged in "statutorily protected activity," (2) that she suffered a "materially adverse action," and (3) that "there was some causal relation between the two events."  *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

The district court granted the Rule 50(b) motion because the court concluded that the evidence was insufficient to provide a basis for the jury's conclusion that Smith's report about the harassment (the protected activity) and her termination (the adverse action) were causally linked.  Our review of this issue is limited to the question of whether Smith presented sufficient evidence to prove each element of this claim. *See Collado v. United Parcel Serv. Co.*, 419 F.3d 1143, 1149 (11th Cir. 2005).

6

The causal-link element is construed broadly; "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Goldsmith*, 513 F.3d at 1278 (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)).  This showing generally requires the plaintiff to establish "that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Id.* (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).

Our decision in, *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997), is instructive in this regard.  In *Raney*, Deborah Raney worked for Vinson Guard Service in one of their branch offices, where she eventually assumed the title and duties of "branch manager."  Despite performing the same functions as the male "branch managers" in Vinson's other offices, Raney asserted that her pay remained below theirs.  After complaining about this discrepancy to her regional supervisor, Gregory Carter, Raney began drafting a statement to the Equal Employment Opportunity Commission (EEOC).  Soon thereafter, Carter drove from Vinson's Birmingham office to search Raney's Decatur office for missing paperwork.  After finding the paperwork, Carter asked Raney to turn in her office keys.  The next day, he telephoned her and told her that she was terminated.

Raney then filed a Title VII retaliation suit.  The district court granted Vinson's motion for summary judgment because Raney failed to "establish the

7

'causal link' prong of a prima facie case, specifically, Raney's alleged inability to show that Vinson knew about her threatened legal action before making the decision to terminate her." *Raney*, 120 F.3d at 1197.  The court's analysis of the causal link prong in *Raney* is especially relevant to Smith's case.  In *Raney*, the court said:

> In order to satisfy the "causal link" prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). Since corporate defendants act only through authorized agents, in a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression and acted within the scope of his or her agency when taking the action. *See Goldsmith*, 996 F.2d at 1162 (general agency principles govern the circumstances in which a principal will be held liable for the acts of its agents under Title VII).

> It is not altogether clear which corporate agent took the adverse action against Raney in this case.  Arguably, Vinson's vice-president provided the catalyst for Raney's termination when he instructed Carter to research the payroll and scheduling records in the Decatur branch office.  Carter actually told Raney she was terminated, so perhaps he too could be viewed as the corporate agent who took the adverse action.  In either case, Raney failed to meet her burden to set forth evidence sufficient for a jury to return a verdict for her after a trial.

*Raney*, 120 F.3d at 1197.  Most importantly, we found that if Vinson's vice president was the relevant corporate agent, Vinson was entitled to summary judgment because Raney presented no evidence demonstrating that Vinson's vice

8

president knew of her protected expression. Specifically, we stated that ". . . while we have held that awareness of protected expression may be established based on circumstantial evidence, our cases have required plaintiffs to show a defendant's awareness with more evidence than mere curious timing coupled with speculative theories." *Raney*, 120 F.3d at 1197 (citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)). We also found that:

> If, alternatively, Carter was the relevant corporate agent, Vinson is entitled to summary judgment because Raney offered no probative evidence regarding the scope of authority, if any, Vinson delegated to Carter over Raney. In its answer to Raney's complaint, Vinson expressly denied Raney's allegation that Carter, acting within the line and scope of his authority as agent for Vinson, terminated Raney in retaliation for protected expression. This denial put the scope of Carter's agency in question, and imposed on Raney the burden of establishing that Carter's authority extended to making personnel decisions regarding Raney.
>
> . . . While the fact that Carter personally informed Raney that she was terminated for misconduct provides some speculative support for a broader view of the scope of Carter's agency, that isolated fact alone is insufficiently probative in light of countervailing facts to satisfy Raney's burden at the summary judgment stage. . . .In this case, Raney's burden included the obligation to set forth significant probative evidence regarding the identity, authority and knowledge of the Vinson agent who allegedly terminated her for retaliatory purposes.

*Raney*, 120 F.3d at 1198. Just as in *Raney*, the evidence Smith produced at trial fails to prove two facts crucial to her case: (1) who it was that made the decision to terminate her and (2) whether this decision maker knew of her complaint. Without

9

these facts established, the jury had no basis for finding that the person who decided to terminate Smith knew about her complaint. And without that finding, no legally sufficient basis exists to conclude that Smith's complaint and her termination were related.

Smith contends that her testimony that Garrett fired her, coupled with the jury's refusal to credit Garrett's testimony saying that he did not have the power to terminate employees, provides a basis for finding that her complaint and her termination were related.  But, two problems undercut her argument.

First, her testimony was not that Garrett made the decision to fire her.  She only testified that Garrett informed her she was being fired.  This testimony does not say who the decision maker was—it only confirms that Garrett, who was the manager on duty at the end of her last shift, reported the termination decision to her.

Second, the jury's disbelief of Garrett's testimony that he could not terminate employees does not suffice to supply the inference that Garrett was the decision maker.  Even if Garrett had the authority to make a termination decision, Smith presented no evidence that Garrett actually made the termination decision in this instance.  Smith argues that a jury, when it determines that a witness's testimony is false, can actually conclude the opposite of that witness's testimony.  But that statement of law is true only if the record contains affirmative evidence of

10

the opposite conclusion; discredited testimony alone cannot be the basis for a conclusion. *See Bose Corp. v. Consumers Union of the U.S., Inc.*, 466 U.S. 485, 512, 104 S. Ct. 1949, 1966 (1984) ("When the testimony of a witness is not believed, the trier of fact may simply disregard it.    Normally the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion."); *see also Moore v. Chesapeake & Ohio Ry. Co.*, 340 U.S. 573, 576, 71 S. Ct. 428, 429-30 (1951) ("[I]t is the jury's function to credit or discredit all or part of [a witness's] testimony.    But disbelief of the [witness's] testimony would not supply a want of proof.")[3]

Here, the record contains no affirmative evidence that Garrett had hiring or firing power.    Smith never testified that Garrett had such power, and she produced no evidence that Garrett had such power.    The jury was free to disregard Garrett's testimony.    Even so, the fact remains that Smith did not show who made the decision to fire her.    Even assuming that Garrett had the authority to fire Smith, there is no evidence that Garrett actually made the firing decision in this instance.    In corporate settings, those who make termination decisions are often not the ones

---

[3] This Court has established an extremely narrow exception to this rule, which is not applicable here.    Where a criminal defendant testifies at trial, and the jury disbelieves the testimony, the jury is free to draw the opposite inference and consider the disbelieved testimony as substantive evidence of guilt. *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). We emphasize the narrowness of this exception.

11

tasked with the unpleasant duty of delivering the termination decisions to employees.

## B. GEORGIA STATE LAW BATTERY CLAIM

The district court also set aside the punitive damages award for Smith under her Georgia state law battery claim because under Georgia law punitive damages may only accompany compensatory or nominal damages. *See* GA. CODE ANN. § 51-12-5.1; *see also Nelson v. Glynn-Brunswick Hosp. Auth.*, 571 S.E.2d 557, 564 (2002). Smith contends that the district court erred in two ways when it set aside the punitive damages award.

First, she argues that Metropolitan could not challenge the punitive damages award in its Rule 50(b) motion because it did not object when the jury announced the verdict and therefore "waived" its challenge. However, Smith has forfeited her right to argue that Metropolitan waived its challenge to the punitive damages award because she failed to raise that challenge before the district court. *See Howard v. Walgreen Co.*, 605 F.3d 1239, 1243 (11th Cir. 2010). In this instance, not only did Smith fail to raise the issue in the district court, she went so far as to *agree with* Metropolitan in her response to the Rule 50(b) motion. Specifically, she stated:

> Plaintiff's counsel concedes that O.C.G.A. § 51-12-5.1 prohibits Mrs. Smith's receipt of any punitive damages for her battery claim where the jury failed to award any compensatory or nominal damages.

12

(Dkt. 91 at 12 n.4)  If the court's ruling was error, it was invited error.  Invited error precludes a court from "invoking the plain error rule and reversing." *United States v. Davis*, 443 F.2d 500, 564-65 (5th Cir. 1971).

Second, she contends that the district court plainly erred by instructing the jury that nominal damages are awarded in an amount that "you . . . decide [is appropriate] under all of the facts and circumstances of the case." (Dkt. 96 at 312.) Smith contends that Georgia law requires a jury to award, at a minimum, nominal damages for an intentional tort.  *See,* e.g.*, Norton v. Holcomb*, 646 S.E.2d 94, 101 (Ga. Ct. App. 2007); *see also Jeter v. Davis*, 127 S.E. 898, 901 (Ga. Ct. App. 1925) (recognizing that a plaintiff "would at least be entitled to" nominal damages by proving the elements of an intentional tort). Under Georgia law, compensatory or nominal damages must be awarded before punitive damages may be awarded. *See* GA. CODE ANN. § 51-12-5.1; *see also Nelson*, 571 S.E.2d at 564.  Smith contends the district court's error allowed it to set aside the jury's punitive damage award because it did not instruct the jury that it must award, at a minimum, nominal damages before it could award punitive damages.

Smith correctly recognizes, however, that she waived this contention by failing to object to the jury instruction before the district court.  She accordingly frames her contention under the plain error doctrine.  *See* Fed. R. Civ. P. 51(c)(2);

13

*Iervolino v. Delta Air Lines, Inc.*, 796 F.2d 1408, 1414 (11th Cir. 1986).  However, we do not consider whether a court committed plain error if the party making that contention invited the error.  *Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1293-94 (11th Cir. 2002).  We have held that a party invites error in the jury instructions when it responds to a court's proposed instructions by saying, "[T]he instruction is acceptable to us." *United States v. Fulford*, 267 F.3d 1241, 1247 (11th Cir. 2001).  We have also held that a party invites error when "the instruction eventually given to the jury reflect[s] changes that [the party itself] proposed and to which they did not later object." *Ford*, 289 F.3d at 1294.

In this instance, Smith invited error in the jury instructions. She failed to propose any jury instruction saying that actual damages are required in the event of a finding of liability before punitive damages may be awarded.  Her proposed charge, like the charge actually given to the jury, does not say that actual damages are required.  And Smith did not object to the instructions as given with regard to damages for battery.  Smith objected to portions of the jury instructions both before and after the district court charged the jury, but did not object to the court's instructions on damages.  In fact, before charging the jury, the district court reviewed its proposed instructions with both Smith's counsel and Metropolitan's counsel.  After reviewing the proposed instructions on damages and hearing feedback from both parties, the court specifically asked Smith's counsel,

14

". . . [H]ave I adequately covered the subject of damages[?]" (Dkt. 96 at 262), and Smith's counsel replied, "Yes, your honor." *Id.* After charging the jury, the district court again asked both Smith's counsel and Metropolitan's counsel if they had any objections to the instructions. Smith's counsel again objected to another part of the instructions unrelated to damages. The district court stated, "I note your exception. Anything else?" (Dkt. 96 at 322.) Smith's counsel replied, "That's it." *Id.* In essence, Smith, through her counsel, clearly represented her assent to the jury instruction throughout the process and in fact contributed to its formation. Only on appeal does Smith raise the alleged error. Thus, we conclude that if there was error, Smith invited the error, and we decline to review for plain error.

## V. CONCLUSION

We find no error in the district court's ruling on the Rule 50(b) motions. We affirm the judgment in the district court.

AFFIRMED.